SHIRLEY R. SCHELLER, Plaintiff-Appellant, v. HEALTH CARE SER-
VICE CORPORATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0195

Opinion filed October 22, 1985.—Modified on denial of rehearing
December 3, 1985.

Londrigan, Potter & Randle, P.C., of Springfield, for appellant.

Brown, Hay & Stephens, of Springfield (Edward J. Cunningham and William F. Trapp, of counsel), for appellees.

JUSTICE MORTHLAND delivered the opinion of the court:

On February 7, 1983, the plaintiff filed a complaint in the circuit court of Sangamon County. She thereafter filed her amended complaint on February 15, 1984, her second amended complaint on August 23, 1984, and her third amended complaint on January 8, 1985.

The second amended complaint was dismissed by the trial court on motion of the defendants. The court stated that the allegations were insufficient to plead intentional infliction of emotional distress, but suggested subparagraphs (a), (b), (c), (f) and (g) might be sufficient to plead retaliatory discharge. The third complaint was the same as the second, except it did not allege intentional infliction of emotional distress.

Count I of the third amended complaint alleged that plaintiff was employed as a supervisor in the Springfield office of Health Care Service Corporation (HCS). During plaintiff's administration of this office she received numerous commendations from HCS and the State of Illinois. During the same period, repeated complaints were made by the State concerning the operation of HCS's Chicago office, which was headed by defendant Raymond Santi. This count further alleged that beginning in late 1979 and continuing through June 1980, HCS's management personnel committed one or more of the following acts:

"(a) The defendant instructed the plaintiff in advance of regularly scheduled meetings with the Department of Personnel of the State of Illinois not to make responses to direct questions

by representatives of the Department of Personnel despite the fact that false, inaccurate, incomplete or otherwise misleading responses were provided by Raymond Santi at those meetings;

(b) The defendant instructed the plaintiff not to respond to direct inquiries made by members of the House of Representatives of the State of Illinois and by other high officials of the State of Illinois concerning administration of the State of Illinois' contact with the defendant despite the fact that false, inaccurate, incomplete or otherwise misleading responses were provided by Raymond Santi at those meetings;

(c) The defendant suggested to the plaintiff that she alter claims figures submitted to the State of Illinois which would represent a significant distortion of reports provided to the State of Illinois;

(d) The defendant forced the plaintiff to terminate a black supervisor without cause and at the same time refused to allow the plaintiff to recruit other minority applicants so that the Springfield office of the defendant could meet Equal Employment Opportunity Standards; and

(e) The defendant demanded that the plaintiff have the supervisors under her supervision falsify evaluations of employees and label them as incompetent in order to reduce staff and at the same time deny unemployment compensation to such employees."

In addition, this count alleged that as a result of the foregoing acts, plaintiff experienced a total physical and emotional breakdown, high blood pressure and other medical problems caused by job pressures and that because of her physical and emotional condition, plaintiff was "forced" to resign from her employment with HCS.

Count II of the third amended complaint alleged that defendant Santi was envious of plaintiff's success in Springfield and feared her promotion ahead of him. Accordingly, in 1979 he embarked on a campaign to interfere with plaintiff's contractual relationship with HCS and to render plaintiff's employment intolerable. Count II alleged that Santi personally committed the acts attributed to HCS under count I. It further alleged that Santi imposed a series of claim reduction demands on her which were designed solely to harass her; that he coerced employees under her supervision to express criticism of plaintiff's job performance directly to her and to others in a locked-room session. During this session, Santi allegedly refused to allow any employees to leave the room until they expressed criticism of plaintiff. As a result of Santi's acts, she was deprived of her employment and

experienced total physical and emotional breakdown. The third amended complaint sought compensatory and punitive damages from HCS in counts I and II and compensatory damages from Santi in count III. The trial court dismissed the third amended complaint with prejudice on March 5, 1985, and plaintiff filed her notice of appeal on March 22, 1985.

The plaintiff contends on appeal that we should reverse the trial court's dismissal of her third amended complaint because it stated a cause of action for retaliatory discharge, or in the alternative she should have been given leave to amend her pleadings.

The defendants contend that we should affirm the dismissal of plaintiff's third amended complaint because (1) the plaintiff failed to allege that defendant HCS discharged her; (2) the plaintiff failed to allege retaliatory conduct on the part of the defendants; (3) the concept of constructive discharge should not be adopted in retaliatory discharge cases; (4) no clearly mandated public policy was violated; and (5) plaintiff did not ask the trial court for leave to file a fourth amended complaint and therefore elected to stand on her third amended complaint.

A cause of action for retaliatory discharge was first recognized by our supreme court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. In *Kelsay*, an employee was discharged in retaliation for filing a workmen's compensation claim against her employer. The court held that the cause of action was necessary to insure that the public policy behind the enactment of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) was not frustrated.

In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, the employee was discharged in retaliation for having gone to the police with information concerning possible criminal conduct by a co-employee and for agreeing to assist police in their investigation. The supreme court held that under those circumstances a retaliatory cause of action was necessary to insure that the public policy behind the enactment and enforcement of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 1—1 *et seq.*) would not be frustrated.

■ The plaintiff fails to allege two elements which are essential to a retaliatory discharge cause of action. First, the plaintiff was not, in fact, discharged but alleges that by reason of her physical and emotional breakdown she "was forced to *resign* from her job." (Emphasis added.)

In *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 450 N.E.2d 1235, the court reversed a judgment in favor of an employee

who was injured on the job; received a medical leave of absence; and was again injured on the job. This second injury rendered him totally and permanently disabled. He was not discharged, nor had he resigned from his employment. The court in *Bryce* stated:

> "It is immediately apparent that the record before us does not contain sufficient proof to establish defendant's guilt of retaliatory discharge. To begin with, there was no discharge of this plaintiff." 115 Ill. App. 3d 913, 921, 450 N.E.2d 1235, 1240.

What we have in the case before us is plaintiff's voluntary termination of her employment.

■ The second element of the cause of action missing from the plaintiff's complaint is an allegation of retaliatory conduct on the part of the defendants. The complaint does not allege any action on the part of the plaintiff which caused the employer to retaliate. Nor does the complaint allege that the employer took retaliatory actions because of plaintiff's failure to perform those instructions and demands that were set out in the complaint.

In *Cuerton v. Abbott Laboratories, Inc.* (1982), 111 Ill. App. 3d 261, 443 N.E.2d 1069, it was alleged that the defendant discharged the plaintiff because he was unable to physically perform certain of the duties that had been assigned to him. The court in *Cuerton* stated:

> "The *Kelsay* and *Palmateer* cases indicate that a cause of action for retaliatory discharge has been stated if the employer has discharged the employee *in retaliation* for the employee's activities, and the discharge was in contravention of a clearly mandated public policy which favored the activity on which the discharge was predicated * * *. Plaintiff here has made no allegation of retaliatory action on the part of Abbott * * *." (Emphasis added.) (111 Ill. App. 3d 261, 267, 443 N.E.2d 1069, 1074.)

The dismissal of the plaintiff's complaint was affirmed.

The plaintiff argues that a retaliatory motive can be inferred from the facts alleged in her complaint. She does not identify these facts, and our examination of the complaint does not lead to this conclusion.

The plaintiff, in her argument, acknowledges that no Illinois case has directly decided that a constructive discharge is sufficient to satisfy the requirements of the tort of retaliatory discharge. She calls our attention to *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 450 N.E.2d 1235, where the court concluded that, even if the concept were recognized in Illinois, the plaintiff failed to establish

facts which would have constituted a constructive discharge.

The plaintiff strongly urges that we adopt the reasoning set forth in *Beye v. Bureau of National Affairs* (1984), 59 Md. App. 642, 477 A.2d 1197. In *Beye*, the plaintiff employee alleged that his supervisors coerced his resignation in retaliation for his having reported certain criminal activity on the part of co-employees. The Maryland Court of Special Appeals in *Beye* said:

> "If an employer directly discharges an at-will employee in such manner as to make the discharge an abusive one under *Adler*, it would defy both reason and fairness to immunize him from liability simply because he has been clever enough to effect the abusive separation by forcing a resignation. That would, in effect, reward him for the extra measure of malefaction—of not only acting in contravention of some clearly mandated public policy but of making things so intolerable that the employee is forced to initiate his own unlawful termination." (59 Md. App. 642, 653, 477 A.2d 1197, 1203.)

The Maryland court then formulated an inquiry for finding constructive discharge:

> "[W]here a resignation is purportedly prompted by working conditions, the applicable standard to determine if the resignation is, in effect, a constructive discharge, is whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." 59 Md. App. 642, 653, 477 A.2d 1197, 1203.

The defendant calls our attention to *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 466 N.E.2d 1137, which did not involve a retaliatory discharge, but where the plaintiff in an action for tortious interference with prospective economic advantage alleged that she was constructively discharged. In *Heying*, the plaintiff nurse sued two doctors and two nurses, alleging that they interfered with her employment relationship with the hospital where they all were employed. The plaintiff there was not, in fact, discharged, but resigned after being transferred from one unit within the hospital to another. The *Heying* court rejected the concept of constructive termination.

■■ ■ We conclude that the parameters of the retaliatory discharge cause of action should not be expanded beyond the concept as set forth in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. Our conclusion is based upon the language of our supreme court in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d

520, 478 N.E.2d 1354, where the court stated:

"Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy ***." 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356.

We note that the *Barr* case found the complaint in issue:

"[D]efective in that it does not allege that the plaintiffs were discharged in retaliation for their activities (*i.e.*, exercising their constitutional and statutory rights). In order to state a valid retaliatory-discharge cause of action, the plaintiff must allege that he was discharged in retaliation for his activities and that his discharge violates a clear mandate of public policy ***." 106 Ill. 2d 520, 528-29, 478 N.E.2d 1354, 1358.

We conclude that adoption of the constructive discharge concept suggested by the plaintiff would contravene the plain language of our supreme court as set forth in *Barr* and would result in a proliferation of cases. Therefore, we reject the constructive discharge concept of the plaintiff.

■ Having concluded that the plaintiff failed to allege discharge, failed to allege retaliatory conduct on the part of the defendants, and that constructive discharge is not an actionable concept, we will not consider whether a clearly mandated public policy was violated by the defendants. Even an affirmative answer to that question would not satisfy the requirements of *Kelsay, Palmateer,* and *Barr.*

Santi points out that count III of plaintiff's third amended complaint purported to state a cause of action against him for interference with a contractual relationship. Santi also notes that plaintiff made no argument in her brief concerning this purported cause of action. Any point not argued is waived, pursuant to Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)). Therefore, we conclude that the trial court's dismissal of count III was correct.

■ Plaintiff's final contention is that the trial court should have given her an opportunity to state a cause of action by allowing her to file a fourth amended complaint. In that regard the plaintiff did not file a motion to vacate the dismissal with prejudice pursuant to section 2–1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2–1203). Had she done this she could have argued to the trial court the propriety of vacating the judgment so that she could

have another opportunity to state a cause of action. Instead, the plaintiff filed her notice of appeal on March 22, 1985. She had not stated a cause of action in her third amended complaint, and we cannot speculate concerning her ability to do so in a subsequent pleading.

The judgment of the circuit court of Sangamon County dismissing the plaintiff's third amended complaint with prejudice is affirmed.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.