DANNY R. MELTON *et al.*, Plaintiffs-Appellants, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellee.—BRYCE E. ANTONACCI *et al.*, Plaintiffs-Appellants, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellee.

Fourth District   No. 4—91—0178

Opinion filed October 31, 1991.

Kevin C. Kaufhold, of Kassly, Bone, Becker, Dix, Reagan & Young, P.C., of Belleville, for appellants.

Jeffrey Alan Ryva, of Husch & Eppenberger, of Peoria, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiffs, employees of Central Illinois Public Service Company (CIPS), sued CIPS on the ground that its absentee policy threatened to penalize them for taking time off work to receive medical treatment for workers' compensation-related injuries. The trial court granted defendant's motion to dismiss on the pleadings. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) Plaintiffs appeal, arguing that they stated a cause of action under *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, for threatening retaliatory discharge.

We affirm.

## I. FACTS

Plaintiffs work for CIPS, a public utility corporation, at its Springfield facility. CIPS has an absentee policy with various levels of sanctions for excessive and patterned employee absences. The policy expressly excludes certain absences, such as those for jury duty, military training, vacations, layoffs, pall-bearer duties, and deaths or hospitalization of family members. However, the CIPS absentee policy allows management to consider absences due to hospitalization and medical treatment for occupational injuries covered by the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) in determining whether an employee has been excessively absent. The policy states the following:

"Any employee who is excessively absent \*\*\* will have their absence record reviewed to determine the reasons for such excessive absence. Where the excessive absence is the result of hospitalization for major illness, heart attack or surgery, or because of occupational injuries, the excessive absence may or may not be subject to corrective remedial action \*\*\* depending on management's consideration of the following factors:

1. The medical problems are of a recurring nature, or otherwise demonstrate to management that there is reason to doubt the employee can be counted upon to be present at work on a regular basis.

2. The occupational injuries are frequent, or otherwise demonstrate to management that there is reason to doubt the employee can be counted upon to be present at work on a regular basis.

3. The absences resulting from medical problems and/or occupational injuries, when combined with unrelated absence from work or tardiness, demonstrate to management that there is reason to doubt the employee can be counted upon to be present at work on a regular basis."

The statute, in pertinent part, states as follows:

"(h) It shall be unlawful for any employer \*\*\* to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act." Ill. Rev. Stat. 1989, ch. 48, par. 138.4(h).

Plaintiffs, along with numerous other employees, have received written reprimands for excessive absences, warning them that continued absences could result in discipline. Plaintiff Melton also received a five-day suspension due to excessive absences that allegedly included absences arising out of his seeking medical treatment for occupational injuries covered by the Act. However, some of the written reprimands given to other employees expressly mentioned that CIPS would not take disciplinary action at the time of the reprimand because the absences arose primarily out of occupational injuries.

Plaintiffs sued CIPS, claiming that the excessive absence policy threatens retaliatory discharge for making workers' compensation claims and requesting $15,000 compensatory and $1 million punitive damages per plaintiff. Plaintiffs alleged that the policy threatens dis-

ciplinary action, including discharge, for making workers' compensation claims for occupational injuries and receiving treatment for those injuries.

Plaintiffs argued to the trial court that they properly stated a cause of action under *Kelsay* against CIPS for threatening retaliatory discharge. The trial court disagreed and granted defendant's motion to dismiss on the pleadings. Plaintiffs make the same argument on appeal.

The standard of review on appeal from a grant of a motion to strike or dismiss a complaint is whether the complaint alleged facts which sufficiently state a cause of action. (*Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 388 N.E.2d 217.) An appellate court may not consider the merits of the case (*Tru-Link Fence Co. v. Reuben H. Donnelley Corp.* (1982), 104 Ill. App. 3d 745, 432 N.E.2d 1188), but should interpret the facts in a light most favorable to the nonmoving party. *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 418 N.E.2d 59.

## II. No Cause Of Action Exists For Threatened Retaliatory Discharge

■ In *Kelsay*, the Illinois Supreme Court recognized a cause of action for retaliatory discharge when an employer fires an employee for making a workers' compensation claim under the Act. In *Kelsay*, a manager at Motorola had warned plaintiff that, although Motorola would compensate her for her occupational injury, Motorola had a strict policy of firing any employee who made a claim under the Act. When plaintiff filed her claim, Motorola paid it but fired her. The court held that the public policy embodied in the Act authorized a cause of action for retaliatory discharge when an employer fires an employee for making a claim under the Act. *Kelsay*, 74 Ill. 2d at 180-81, 384 N.E.2d at 356-57.

Since then, courts have narrowly interpreted this cause of action. See *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356 ("Contrary to plaintiffs' assertion *** this court has not *** 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort"); *Scheller v. Health Care Service Corp.* (1985), 138 Ill. App. 3d 219, 225, 485 N.E.2d 26, 30 (refusing to expand the retaliatory discharge tort to cases of "constructive discharge," using *Barr* as authority for narrowly interpreting the tort); *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529-30, 519 N.E.2d 909, 911 (quoting *Scheller*'s narrow interpretation of *Barr* approvingly); see also *Gonza-*

*lez v. Prestress Engineering Corp.* (1990), 194 Ill. App. 3d 819, 823-24, 551 N.E.2d 793, 797-98 (refusing to extend the tort to cases where an employer fires an employee for filing a false workers' compensation claim).

■ In *Hinthorn* (119 Ill. 2d at 529, 519 N.E.2d at 911), the supreme court stated the *Kelsay* cause of action as follows: "[a] plaintiff states a valid claim for retaliatory discharge only if she alleges she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." The very title of the tort and the first element listed in *Hinthorn* facially limit the tort to cases where an employer discharges an employee.

Further, courts have implicitly rejected the notion that threats to discharge, discipline, or other coercion short of discharge can provide the basis for a claim under *Kelsay*. This court has rejected the "constructive retaliatory discharge" claim of an employee who voluntarily quit her job because (she asserted) her employer harassed her for providing information to the State Department of Personnel. (*Scheller*, 138 Ill. App. 3d at 224-25, 485 N.E.2d at 29-30.) Subsequently, in *Hinthorn*, the supreme court held that a coerced resignation in lieu of being fired constitutes a discharge. (*Hinthorn*, 119 Ill. 2d at 529-32, 519 N.E.2d at 911-12.) However, the court in *Hinthorn* seemed to indirectly approve of our analysis in *Scheller* when it wrote the following: "We agree that plaintiff has sufficiently alleged that she was discharged, but wish to make abundantly clear that we are not now endorsing the constructive discharge concept rejected by the appellate court in *Scheller*." (*Hinthorn*, 119 Ill. 2d at 530-31, 519 N.E.2d at 912.) We view the *threatened* retaliatory discharge theory as further removed from the tort of retaliatory discharge than the constructive discharge theory rejected expressly by *Scheller* and indirectly by *Hinthorn*. Therefore, a plaintiff must allege a coerced resignation or actual discharge—and not merely a threat to discharge or discipline short of discharge—in order to state a valid claim for retaliatory discharge.

■ In the present case, plaintiffs have not alleged that CIPS fired any of the plaintiffs—nor, indeed, any of its other employees—under the excessive absence policy. Thus, the analysis of plaintiffs' claims need not go beyond the first element of the retaliatory discharge cause of action; without alleging a discharge, the plaintiffs have failed to state a cause of action.

By bringing this appeal, plaintiffs essentially ask us to expand the notion of retaliatory discharge to cases where the employer merely *threatens* discharge or, alternatively, where the employer takes disci-

plinary action short of discharge, such as the suspension of one of the plaintiffs in this case. However, plaintiffs make this request in the wrong forum. Plaintiffs should address the change in the law they propose to the institution in this State charged with making public policy: the Illinois General Assembly. As an alternative to legislative action, plaintiffs could address their proposal to the Illinois Supreme Court. However, we do not believe it appropriate for this court to create the new tort of threatening retaliatory discharge.

### III. CONCLUSION

We hold that the retaliatory discharge tort recognized in *Kelsay* and *Hinthorn* does not extend to threats of discipline or even actual discipline short of discharge. Therefore, we affirm the trial court's dismissal.

Affirmed.

GREEN and KNECHT, JJ., concur.