DORENE WRIGHT, Plaintiff-Appellant, v. ST. JOHN'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS, Defendant-Appellee.

Fourth District   No. 4—91—0476

Opinion filed May 28, 1992.

Gregory A. Scott, of Scott & Scott, P.C., of Springfield, for appellant.

Richard J. Wilderson and Bradley E. Huff, both of Graham & Graham, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Dorene Wright, brought an action for retaliatory discharge against defendant, St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis. The trial court granted summary judgment in favor of defendant, and plaintiff appeals. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

St. John's Hospital hired plaintiff in August 1981 to work as a licensed practical nurse (LPN). In 1983, during the course of her employment, plaintiff injured her back while bathing and repositioning a patient. During 1983 and 1984, as a result of her back injury, plaintiff was seen by several physicians and hospitalized several times. Her doctor, Walter W. Wheelhouse, wrote a letter in July 1984, stating his opinion that plaintiff could not return to her normal duties as an LPN "since she is unable to lift patients, as most nurses would do in their daily activities."

Plaintiff instituted an action with the Illinois Industrial Commission in March 1983 under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*). In August 1984, plaintiff and defendant executed a settlement contract lump sum petition and order in the sum of $60,000, settling her Industrial Commission action. That agreement included statements that plaintiff's injury was to the "whole person" and that "petitioner has chosen another line of work."

In November 1984, Dr. Wheelhouse reduced plaintiff's weight-lifting restriction. Plaintiff then attempted to return to work as an LPN. However, Dr. Pradeep Kulkarni, the hospital's employee health physician, examined her in January 1985 and concluded that she "was not physically capable *** of performing the physical activities required of an LPN at St. John's Hospital." Defendant then offered her several alternative positions at the hospital, but plaintiff either declined those positions or did not have the requisite qualifications to be hired.

In February 1985, plaintiff filed a two-count complaint against defendant. Count I sought injunctive relief, ordering defendant to rehire plaintiff as an LPN. Plaintiff voluntarily dismissed that count in August 1990. Count II accused defendant of retaliatory discharge (see Ill. Rev. Stat. 1989, ch. 48, par. 138.4(h)) and sought both compensatory and punitive damages. In August 1990, the trial court granted defendant's motion for summary judgment on count II. Plaintiff now appeals that judgment.

## II. SUMMARY JUDGMENT

"Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 246, 571 N.E.2d 1107, 1110; Ill. Rev.

Stat. 1989, ch. 110, par. 2—1005(c).) The party moving for summary judgment must show, as a matter of law, that it is entitled to judgment. (*Gardner*, 213 Ill. App. 3d at 250, 571 N.E.2d at 1112.) In making this decision, the trial court may draw inferences from undisputed facts; if reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by the trier of fact and the motion should be denied. "In light of the standard, the trial court does not have any discretion in deciding the matter." (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272, 586 N.E.2d 1211, 1215.) On review, this court reviews the granting of summary judgment *de novo*—that is, this court must determine if the trial court correctly decided that no genuine issues of material fact were present. *Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167; *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 240, 494 N.E.2d 830, 833-34; see also Fegan, *Appellate Court Should Rethink Standard of Review for Summary Judgments,* Chicago Daily Law Bulletin, Nov. 26, 1991, at 2, col. 1.

We note with some perplexity that the trial court's order in this case included a section entitled "findings of fact." As stated earlier, a trial court should grant a motion for summary judgment only when no genuine issue of material fact exists. When granting that motion, a trial court resolves only questions of law. By definition, a trial court should deny summary judgment if it must make "findings of fact." Because we are reviewing this case *de novo*, we will disregard the trial court's purported "findings of fact" as we determine whether defendant was entitled to summary judgment as a matter of law.

### III. RETALIATORY DISCHARGE

Plaintiff raises two arguments on appeal: (1) what we consider to be a "traditional" claim of retaliatory discharge, and (2) a claim that she has a statutory right under the Act to be assigned by the hospital to some suitable alternative employment. We will address the traditional claim first.

### A. *"Traditional" Retaliatory Discharge*

■ To sustain an action for retaliatory discharge, a plaintiff must prove three propositions: (1) defendant discharged plaintiff; (2) defendant did so in retaliation for her conduct; and (3) defendant's discharge of plaintiff clearly violated public policy. (See *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911; *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 524-26,

478 N.E.2d 1354, 1356; *Scheller v. Health Care Service Corp.* (1985), 138 Ill. App. 3d 219, 222-23, 485 N.E.2d 26, 28-29.) A defendant in a retaliatory discharge action is entitled to summary judgment if it shows that no genuine issue of material fact exists in that the plaintiff cannot prove any one or more of these propositions.

■ Construing the pleadings, depositions, and affidavits in a light most favorable to plaintiff, the nonmoving party, as we are required to do under *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 176-77, 483 N.E.2d 210, 215, we hold that the trial court properly granted summary judgment because defendant showed that plaintiff was not discharged in retaliation for her filing a claim with the Industrial Commission.

The complaint alleges that defendant retaliated against plaintiff because of her workers' compensation claim; however, the record establishes that defendant refused to rehire plaintiff as an LPN solely because of her inability to perform the physical tasks of an LPN. (See *Scheller*, 138 Ill. App. 3d at 223, 485 N.E.2d at 28.) Portions of plaintiff's December 1986 deposition were added to the record as part of defendant's motion for summary judgment and plaintiff's response to that motion. From that deposition, the following conclusions are clearly evident: (1) plaintiff's disability limited her physical abilities; (2) the defendant hospital had established basic physical ability requirements that its LPNs had to meet; and (3) plaintiff's physical inability to meet these standards, *not* some act of retaliation, precluded plaintiff from returning to work as an LPN for defendant. Plaintiff testified as follows:

"Q. [By Counsel for defendant:] Was it your intention at that time to pursue a different line of work?

A. *** I was agreeable to working at another line of work since I was told I could not work as an LPN.

Q. You had been been told by Dr. Wheelhouse you could not work as an LPN?

A. Dr. Wheelhouse and the hospital because the hospital statement was I could not work as an LPN with any limitation on my position.

* * *

Q. *** Were you offered some kind of position?

A. No, I was not. I was told LPN's could not be employed by the hospital with any restrictions at all.

* * *

Q. Dr. Wheelhouse in May of '85 states you still have not

progressed to preaccident condition and have some weakness in limitation. Do you agree with that?

A. Yes, I do.

Q. That that was your condition in May of '85?

A. That I had not returned to previous before-injury condition, yes, I do.

Q. And that you had weakness?

A. Yes, I do.

Q. Advised caution with heavy lifting or overhead lifting? That is July of '84 he advised caution with heavy lifting and overhead lifting, is that right?

A. Yes.

Q. He continues to feel that those limitations were still applicable in May of 1985. You disagree with that?

A. I assume that is what he felt, if that is what the letter says.

Q. Do you feel you have limitations?

A. Yes, I feel I have slight limitations.

Q. What are those?

A. Well, I still do have the problem, to some degree, with my eyes. I still have slight weakness on the left side.

* * *

Q. [Did] [a]nyone ever told [sic] you that you are physically able to perform the LPN job at St. John's Hospital?

A. Dr. Trudeau sent a letter in fact stating in his opinion I was capable of functioning as an LPN as nursery or newborn nursery or pediatrics or even in the health care office.

Q. Who said that, Dr. Trudeau?

A. Dr. Trudeau. And Dr. Wheelhouse and I had talked about it the last time I was in his office. He said there was many functions I could function as I could not return to the same floor I was on because of the heavy lifting.

Q. Has anyone ever told you you could work without those restrictions and restrictions to those areas as LPN?

A. No, sir.

* * *

Q. The complaint that has been filed in the Industrial Commission states you have chosen another line of work. Had you, at that time, chosen another line of work?

A. No, and the day that was in front of the hearing board my attorney, on my behalf, because I insisted, called the agent and clarified to me that that meant I was agreeable to choose

another line of work besides LPN because I was informed I could not work as an LPN. Under no way did I understand I was choosing another line of work other than the hospital. And I told in front of the judge that in no way meant I could not get my job back at the hospital.

Q. *The job or a job?*

A. *A job.*

Q. *Not the LPN job, right?*

A. *At that time I was not able to function as an LPN at the hospital because of their restrictions against my weight [(i.e., lifting)] restrictions.*

Q. But your own Dr. Wheelhouse in July, just a couple of months before you signed this said you were not able to work as an LPN, is that true?

A. That is why I said I was under the understanding I was agreeable to work in other line of work other than LPN.

Q. It is not only as a hospital restriction, it is your own doctor?

A. I was understanding I was able to work in the nursery.

Q. In July of '84?

A. I had a ten-pound weight limit. There are very few ten-pound babies. I called the hospital and asked if I could not be placed in the nursery. They said their policy was [that if a person] had any restriction you [(that person)] could not work as an LPN. So I agreed to work anywhere in the hospital." (Emphasis added.)

In her deposition, plaintiff admits that she is physically restricted and that the defendant hospital had not employed her in her former position as an LPN because she is not physically able to perform the minimal physical requirements of the job. Therefore, whether plaintiff could perform as an LPN in some other department of the defendant hospital is not relevant.

In May 1985, Dr. Wheelhouse concluded that although plaintiff "has not progressed to her pre-accident physical condition, and still has some weakness and some limitations *** she should be able to perform her regular working duties with precautions." Dr. Wheelhouse then suggested that plaintiff could perform the duties of an LPN in the nursery, pre-operation, or post-partem departments. However, the record makes clear that the defendant hospital does not have different classes of LPNs—those who can perform all the duties of an LPN and those who are restricted-duty LPNs—that differ be-

tween departments of the hospital. Dr. Kulkarni explained the hospital's position on this point as follows:

"Q. [By counsel for plaintiff:] It is true that she could most likely work in the newborn nursery[,] pre-op and postpartum with the findings that you had in January of '85, isn't that true?

A. Well, again, in January of 1985 when I was asked to evaluate the patient, I do not necessarily evaluate them whether they are going to be working in an office situation or whether they are going to be working on the floor, whether they're going to be in newborn nursery or intensive care or neurology floor. It doesn't really matter.

I'm given a set of criteria as far as their physical demands are concerned, and when I say that the person is not capable of working as a nurse, that could be in any capacity at any floor in any nursing department.

Q. Is there any weight limitation that you are given in your standards that a person must be able to perform in order to be qualified to work as an LPN?

A. I don't think there is any definite weight limitation given but I think having worked in the hospital for many years, I am fully aware of what a nurse sometimes has to perform in terms of weight limitations, I mean, in terms of lifting patients as well as doing other chores.

Q. Doctor, would it surprise you to learn that this lady is working as an LPN at SIU School of Medicine and has continued to do so since April of 1986?

A. It depends on what department, in what capacity the person is working.

\* \* \*

\*\*\* In other words, the person could be working in an office situation or in an administrative situation where the person may not have any physical demands as compared to a person working in an intensive care unit where a nurse may have to lift a two hundred pound patient or help a two hundred pound patient who is not capable of helping himself at all so there are two extremes here we are talking about.

\*\*\*

Q. It is true, Doctor, is it not, that these limitations that you found that would exclude her from working in your opinion would apply only to the situation as an LPN, is that correct?

A. That's correct."

Dr. Kulkarni's statement provides further evidence that the hospital does not distinguish between LPNs in their employment. The defendant hospital may choose *not* to establish multiple categories of LPNs—those who can do heavy lifting and those who cannot—and that is apparently what it has done. The hospital's choice is neither unreasonable nor unlawful and may reflect sound administrative policy, providing for maximum flexibility in the utilization of LPNs throughout the hospital. In any event, the issue is one for the hospital, not the courts, to resolve.

"Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to [her] assigned position." (*LaPorte v. Jostens, Inc.* (1991), 213 Ill. App. 3d 1089, 1093, 572 N.E.2d 1209, 1212.) The court in *LaPorte*, relying on *Horton v. Miller Chemical Co.* (7th Cir. 1985), 776 F.2d 1351 (applying Illinois law), concluded that "medical inability to work was a 'legitimate nondiscriminatory reason' for discharge and the defendant's failure to reassign plaintiff was immaterial to whether plaintiff was wrongfully discharged." (*LaPorte*, 213 Ill. App. 3d at 1093, 572 N.E.2d at 1212.) We find no genuine issue of material fact to support plaintiff's claim for "traditional" retaliatory discharge.

### B. *Retaliatory Failure To Assign To Suitable Alternative Employment*

At oral argument, plaintiff clarified that her second claim was distinct and different from "traditional" retaliatory discharge. Her second claim was based upon section 4(h) of the Act, which reads, in part, as follows:

"It shall be unlawful for any employer *** to discharge or to threaten to discharge, *or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 48, par. 138.4(h).)

Plaintiff contends that this section entitles her to continued employment by defendant "in a suitable capacity," and that defendant's failure to assign her to "active service in a suitable capacity" at the hospital, consistent with her physical condition, provides her with a cause of action under the Act. She claims that on this record, it is at least arguable that defendant denied her this statutory right as a result of the workers' compensation action she brought against St. John's Hospital, thus giving rise to her claim that the defendant's conduct

amounts to retaliatory failure to assign to suitable alternative employment.

The Act is remedial in nature and is designed to promote the general welfare. A cause of action for retaliatory discharge exists in furtherance of this public policy. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357.) The State of Illinois has determined that the right to pursue workers' compensation benefits should not be interfered with by discharge or an employer's failure to rehire or recall an employee to active service in a suitable capacity. (Ill. Rev. Stat. 1989, ch. 48, par. 138.4.)

> "The fact that defendant had no duty to rehire is irrelevant in retaliatory discharge or refusal to rehire or recall cases involving at-will employees since the material issue *is not whether* the employer has an obligation to retain a worker, *but why* the employer discharged the employee." (Emphasis added.) *Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 175, 533 N.E.2d 1, 5.

Illinois employers are not required to rehire disabled employees, but the employer cannot terminate or refuse to rehire because the employee sought benefits under the workers' compensation laws. (*McEwen v. Delta Air Lines, Inc.* (7th Cir. 1990), 919 F.2d 58, 60.) However, "[c]ausality does not exist if the basis for discharge is valid and nonpretextual." *Slover v. Brown* (1986), 140 Ill. App. 3d 618, 621, 488 N.E.2d 1103, 1105.

■ The issue before this court is whether the trial court was correct in determining that no genuine issues of material fact were present. Defendant presented affidavits purporting to show that defendant offered plaintiff other positions, such as in the medical records division, the business office, radiology, and as a dietary hostess. Plaintiff presented affidavits purporting to show that she was interested in accepting a suitable position with the defendant and disputing defendant's claims that it made any *bona fide* offers to place her in a suitable alternative employment. These disputes present a genuine issue of material fact, and summary judgment as to this portion of plaintiff's complaint should not have been granted. Although defendant was not required to create a job for plaintiff, this case presents questions of fact of whether there was suitable alternative employment already available for plaintiff, and whether plaintiff was offered the same by defendant.

## IV. Conclusion

The trial court correctly determined that no genuine issue of

material fact is present in this case regarding plaintiff's failure to demonstrate that she was discharged in retaliation for bringing a workers' compensation claim. However, genuine issues of material fact exist in regard to plaintiff's claim that defendant has failed to rehire or recall her to active service in a suitable capacity because of her filing a workers' compensation claim. Accordingly, we affirm in part and reverse in part the order granting summary judgment, and remand for further proceedings.

Affirmed in part; reversed in part and remanded.

McCULLOUGH and LUND, JJ., concur.