UNITED STATES of America, ex rel., Rex A. ROBINSON, James Fredericks, James H. Holzrichter, and Lynn T. Austrheim, Plaintiffs,

v.

NORTHROP CORPORATION, Defendant.

No. 89–CV–6111.

United States District Court, N.D. Illinois, E.D.

Jan. 8, 1993.

J. Peter Dowd, Kalman D. Resnick, Dowd & Bloch, Robert D. Allison, Ronald L. Futterman, Aram A. Hartunian, Futterman & Howard, Chtd., Joshua Karsh, Law Offices of Robert D. Allison, Chicago, IL, for plaintiffs.

Michael R. Dockterman, Lisa S. Simmons, Timothy G. Nickels, Robin L. Wolkoff, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Rex Robinson (Robinson), James Fredericks (Fredericks), James Holzrichter (Holzrichter) and Lynn Austrheim (Austrheim) bring this *qui tam* action under the False Claims Act (FCA or the Act), 31 U.S.C. §§ 3729–33, against defendant Northrop Corporation (Northrop), alleging that Northrop made fraudulent statements and claims to the United States government (count I). In addition, plaintiffs bring a claim under Illinois law against defendant for retaliatory discharge (count II). Before us now is defendant's motion for dismissal of plaintiffs' complaint and defendant's motion for summary judgment with respect to plaintiff Fredericks. For the reasons stated below, defendant's motions are granted in part and denied in part.

### FACTS

Plaintiffs, current or former employees of defendant, filed a sealed complaint on August 10, 1989, against Northrop, in accordance with the *qui tam* provision of the FCA. The FCA authorizes private individuals to file suit and prosecute against any person or entity alleged to have presented a false claim to the Federal Government. 31 U.S.C. § 3730(b). These private individuals, called "*qui tam* plaintiffs" or "relators," may recover up to thirty-five per cent of the proceeds of the action.

The FCA requires that after the relator files the complaint the government be given the opportunity to investigate the claim and decide whether to enter the action. 31 U.S.C. § 3730(b)(2). If the government decides not to intervene, the complaint is unsealed and the suit proceeds at the direction of the relator on behalf of the government. The government may join the suit at a later date, however, upon a showing of "good cause." § 3730(c)(3). Whether or not the government intervenes, the relator is entitled to a portion of the proceeds if the prosecution is successful.[1]

In the case before us the government has declined to intervene. In August 1992, this court ordered the complaint unsealed, and the suit has proceeded at the direction of the *qui tam* plaintiffs.

Plaintiff Fredericks is in a somewhat different position from the other plaintiffs. On October 28, 1988, Fredericks filed a charge of discrimination against Northrop with the Illinois Human Rights Commission (IHRC) and the Equal Employment Opportunity Commission (EEOC). In September 1991, he signed a document entitled "Settlement Agreement and General Release" (Release) in exchange for $10,000.00. The document included the following paragraphs:

3. Fredericks does hereby forever release and discharge Northrop, its officers, directors, successors, assigns, affiliates, agents, and employees from any and all

---

**1.** If the government joins the suit, the *qui tam* plaintiff will receive no less than fifteen percent and no more than twenty-five percent of the bounty. § 3730(b)(1), (d)(1). If the government does not intervene, the relator will recover thirty to thirty-five percent. § 3730(d)(1), (2).

liabilities, charges, complaints, claims, demands, causes of action or suits at law or equity of whatever kind or nature, known or unknown, which he or his personal representative may now or may hereafter have or assert against Northrop, based in whole or in part on any manner or thing occurring prior to this date, including, but not limited to claims Fredericks has asserted in the Complaint, which relate to Fredericks' employment termination from Northrop.

4. Fredericks understands and agrees that the consideration recited above is in full settlement and satisfaction of all claims and demands whatsoever against Northrop as described in paragraph 3, including any and all claims or demands for money damages, attorneys' fees and costs.

### DISCUSSION

Northrop moves this court for dismissal of plaintiffs' complaint and for summary judgment against Fredericks. Defendant maintains that count I of the complaint should be dismissed because plaintiffs have failed to plead the False Claims Act fraud allegations with particularity, as required by Fed. R.Civ.P. 9(b), and defendant further maintains that dismissal is necessary because the *qui tam* provisions of the Act are unconstitutional. Defendant moves to dismiss count II on the following grounds: that in the event count I is dismissed, then count II should also be dismissed since this court would lack subject matter jurisdiction over the pendent state law claim; and that plaintiff Holzrichter has not stated a claim of retaliatory discharge upon which relief can be granted since Holzrichter did not allege that he was discharged by Northrop. In addition, defendant moves for summary judgment against Fredericks, maintaining that Fredericks released all claims, including claims against Northrop alleging violations of the FCA and/or retaliatory discharge by Northrop, when he signed the releasing document.

### I. *Count I*

■ Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Although the Seventh Circuit has not directly ruled on the applicability of Rule 9(b) to FCA civil suits, one ruling in this district has held that 9(b) is inapplicable to FCA fraud claims because such claims are based on statute rather than common law. *United States v. A and C Investments, Inc.*, 513 F.Supp. 589, 590 (N.D.Ill.1981). The reasoning in *A and C*, however, no longer applies because we have uniformly required litigants asserting statutory fraud claims to comply with Rule 9(b) since that holding. *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 747 F.2d 384, 405 (7th Cir. 1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (noting that Rule 9(b) applies to fraud allegations in civil RICO complaints); *Barr Co. v. Safeco Insurance Co. of America*, 583 F.Supp. 248, 258 (N.D.Ill.1984) (stating that while violation of Illinois Consumer Fraud and Deceptive Business Act is not the same as the commission of common law fraud, it is considered a fraudulent act and is protected by 9(b)). We conclude that 9(b) applies to FCA fraud claims because not only is such a conclusion in accord with other courts and our more recent decisions, but also because its applicability is consistent with the purposes of Rule 9: (1) to inhibit claims that are filed as a pretext to uncover unknown wrongs; (2) to protect defendants from the harm that results from charges of serious wrongdoing; and (3) to give defendants notice of the complained-of conduct, enabling defendants to prepare a defense. *Coronet Insurance Co. v. Seyfarth*, 665 F.Supp. 661, 666 (N.D.Ill.1987). *See also U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1055, 1058 (S.D.Ga.1990) (holding that Rule 9(b) applies to FCA); *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F.Supp. 1040, 1051–52 (S.D.Ga.1990); *Juliano v. Federal Asset Disposition Association (FADA)*, 736 F.Supp. 348, 353 (D.D.C.1990), *aff'd* 959 F.2d 1101 (D.C.Cir.1992); *U.S. ex rel McCoy v. California Medical Review, Inc.*, 723 F.Supp. 1363, 1372 (N.D.Cal.1989) (applying 9(b) to FCA fraud allegations); *United States v. Bonanno Organized Crime Family of La Cosa Nostra,*

695 F.Supp. 1426, 1434 (E.D.N.Y.1988) (same). A FCA fraud complaint, like any other fraud action, must be in accordance with Rule 9 and therefore plaintiffs must plead their fraud allegations with particularity.

■ Plaintiffs maintain that several factors, unique to *qui tam* actions, affect the application of Rule 9(b). First, they argue that because the victim of the fraud was the government, and not the plaintiffs themselves, "there can be no presumption, as in most fraud cases, that the plaintiffs are in a position to specify the time, place, and method of communication of the actual false claims" (plf. brief at 3). We disagree with their logic and refuse to apply a lesser pleading standard to *qui tam* plaintiffs. We agree that Rule 9 does not require that evidentiary detail be included in the complaint, but it *does* require plaintiffs to plead with particularity the circumstances of fraud, including the time and place of the fraud, the contents of the omissions or misrepresentations and the identity of the party perpetrating the fraud. *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981), *cert. denied* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982); *Coronet,* 665 F.Supp. at 666. The *qui tam* plaintiff is a special plaintiff who steps into the government's shoes and is permitted to sue on the government's behalf. To apply a more lenient standard merely because the plaintiff was not the victim of the fraud and/or did not have access to all the facts, would be unfair to a defendant who may have to answer a complaint that would not be acceptable if the government had intervened in the action. The *qui tam* plaintiff should not be given special treatment, and applying 9(b) in such a manner would defeat the objectives behind the Rule. This may mean the potential *qui tam* plaintiff will have to keep a detailed record of what he or she observes or delve more deeply into the contents of the fraud, if necessary.

Second, plaintiffs argue that where the defendant is a corporation there is no need to specify in the complaint the role of each individual defendant, as is required where multiple defendants are alleged to have participated in the fraud. Plaintiffs seem to be making an unnecessary distinction between multiple defendant cases and single defendant cases. In either situation, the identity and/or role of the individual employee involved in the alleged fraud must be specified in the complaint, since such information is within the relator's knowledge.

■ In its Rule 9(b) motion, Northrop specifically identified, paragraph by paragraph, what it believed to be the factual deficiencies in the relators' complaint. We have examined the complaint carefully and agree that plaintiffs have failed to plead their fraud allegations in accordance with 9(b). Although we will not discuss every specific deficiency in plaintiffs' complaint, we point out that plaintiffs consistently failed to meet the "who, what, when, and where" pleading requirement for fraud. For example, it is not enough for plaintiffs to allege that "a Northrop engineer" or "Northrop employees" or "superiors" committed fraudulent acts (*see e.g.* plf. cplt. ¶¶ 14–16, 20, 22, 25, 32, 36, 46). The identification of the employee, or at least a more specific description of the person, is within plaintiffs' knowledge, and such information must be provided in the complaint. In addition, plaintiffs often failed to allege the contents (the "what") and/or the time and place of the fraud in their complaint.[2] Furthermore, pleadings cannot generally be based on information and belief unless the factual information is "peculiarly within the defendant's knowledge or control."

**2.** *See e.g.* plf. cplt. ¶ 20 (alleging that "Northrop employees devised a scheme to create the appearance that all proper salvage credits were given by crediting the Government for salvage for scrap transactions that had occurred in the last quarter of 1988 and the first quarter of 1989"); plf. cplt. ¶ 23 (claiming that plaintiff attended meeting in 1989 where a "scheme was discussed to avoid crediting the United States Government for $9 million to $11 million in excess inventory ... As of the time of the meeting, the facts regarding this excess inventory had been concealed from the Government and the Committee members intended the deception to continue."); plf. cplt. ¶ 35 (alleging that "[o]ther false or fraudulent representations were made by Northrop directly or indirectly to the Government regarding progress of the SP–3 Project.... Northrop employees performed work on various stages of the SP–3 Project that were previously represented by Northrop ... as having been completed").

*U.S. ex rel. v. Blue Cross,* 755 F.Supp. at 1052. In such a case, allegations made on information and belief are acceptable if the complaint adduces "specific facts supporting a strong inference of fraud." Conclusory allegations will not suffice, and the facts must amount to more than the "mere suspicion that the fraud occurred." *Id.* (citation omitted). Plaintiffs make numerous allegations based on information and belief that fail to provide supporting facts on which the belief is founded and where, at times, the necessary information was not "peculiarly" within the defendant's control. *See e.g.* plf. cplt. ¶¶ 26, 30, 33–35, 41, 45–46.

We recognize that plaintiffs may sometimes conclude "upon information and belief" that a fraud was perpetrated because that is a reasonable inference from the specific facts pled, but if that is their basis for so concluding, they should say so. We recognize that plaintiffs may not be in a position, and are not required, to plead a wealth of evidentiary detail, and that some of the allegations, *e.g.,* the first three sentences of paragraph 41, are very specific. Most of the allegations, however, repetitively refer to unnamed persons at unspecified times, even though the specifics are presumably known to the plaintiffs. Defendant complains that it has 35,000 employees and cannot reasonably respond in those circumstances. We agree.

Because plaintiffs have not supplied the required facts to support their fraud allegations, they have not satisfied Rule 9(b). We therefore dismiss count I without prejudice and grant plaintiffs leave to amend their complaint in order to bring it into compliance with 9(b). Plaintiffs, if they so wish, may submit an amended complaint to this court within thirty calendar days from the date of entry of this order.[3]

## II. *Count II*

### A. All Plaintiffs

When a "claim giving rise to federal jurisdiction drops out of the case, any remaining state-law claims are normally dismissed without prejudice ... or remanded to state court." *Hicks v. Resolution Trust Corporation,* 767 F.Supp. 167, 173 (N.D.Ill.1991), *aff'd* 970 F.2d 378 (7th Cir.1992) (citation omitted). Count II, plaintiffs' state law claim for retaliatory discharge, is the only claim remaining since we have dismissed without prejudice count I of the complaint, which was the basis for federal jurisdiction. We therefore dismiss without prejudice count II for lack of pendent jurisdiction.

### B. Plaintiff Holzrichter [4]

To state a claim for retaliatory discharge under Illinois law, Holzrichter must allege: (1) that he was actually discharged; (2) that he was discharged in retaliation for his activities; and (3) that the discharge violated a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington, Inc.,* 119 Ill.2d 526, 116 Ill.Dec. 694, 696, 519 N.E.2d 909 (1988). Plaintiff Holzrichter did not allege in the complaint that he was discharged from Northrop and therefore his claim for retaliatory discharge fails.

Holzrichter argues that the Illinois Supreme Court has not yet decided whether to expand the tort of retaliatory discharge to include retaliatory harassment and therefore urges this court to recognize his cause of action. The Illinois courts and the Seventh Circuit have, however, repeatedly discouraged the expansion of the retaliatory discharge cause of action and have strictly construed its elements. *Ludwig v. C & A Wallcoverings, Inc.,* 960 F.2d 40, 43 (7th Cir.1992) (stating that "Illinois courts have uniformly refused any expansion of the tort of retaliatory discharge, particularly with regard to the element of actual termination"); *Veit v. Village of Round Lake Park,* 167 Ill.App.3d 350, 118 Ill.Dec. 77, 79, 521 N.E.2d 145, 147 (2d Dist.1988) (concluding that "no basis exists upon which to expand the limited tort of retaliatory discharge to the concept of retal-

---

3. At this time, we need not address defendant's claim that count I should be dismissed because the *qui tam* provision of the FCA is unconstitutional.

4. While we dismissed count II of plaintiffs' complaint for lack of pendent jurisdiction we, nevertheless, address defendant's arguments regarding the state law claims since plaintiffs may amend their complaint and re-allege their state claims.

iatory harassment"); *Scheller v. Health Care Service Corp.*, 138 Ill.App.3d 219, 92 Ill.Dec. 471, 474, 485 N.E.2d 26, 29 (4th Dist.1985) (concluding that the parameters of the retaliatory discharge cause of action should not be expanded). As a surrogate state court it is not our role to engage in the development of Illinois law beyond the contours defined by existing precedent. Holzrichter's claim of retaliatory discharge is dismissed with prejudice.

### III. *Northrop's Motion for Summary Judgment Against Fredericks*

Northrop moves for summary judgment against Fredericks, arguing that both counts of Fredericks' complaint are barred by the express terms of the Release executed by Fredericks in a prior claim against Northrop. Although we have dismissed plaintiffs' complaint, we nevertheless address defendant's arguments since plaintiffs may file an amended complaint before this court.

■ When an agreement is clear on its face, the plain language of the document controls and the contract must be enforced as written. *Federal Deposit Insurance Corporation v. Zaborac*, 773 F.Supp. 137, 140 (C.D.Ill.1991). Where the contract is ambiguous, however, the court must resort to extrinsic evidence to interpret the meaning of the documents and the intent of the parties. *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). In Illinois, ambiguity exists when either the agreement itself is unclear or when—although the agreement itself is clear—"anyone familiar with the real-world context of the agreement would wonder what it meant with reference to the particular question that has arisen." *Federal Deposit Insurance Co. v. W.R. Grace & Company*, 877 F.2d 614, 620 (7th Cir.1989), *cert. denied* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). A contract is ambiguous if it is capable of more than one meaning. *Mac-Donald–Smith v. FMC Corp.*, 713 F.Supp. 264, 268 n. 2 (N.D.Ill.1989), *aff'd* 902 F.2d 37

(7th Cir.1990). Such is the case here, where the document is vulnerable to two interpretations: one, that *all* claims were released, and the other, that only claims concerning Fredericks' employment termination from Northrop were released. Under either interpretation, Fredericks released claims concerning his employment termination and therefore cannot pursue a retaliatory discharge claim against Northrop.[5] However, a plain reading of the document leaves open the question as to whether Fredericks released claims other than those relating to his employment termination.

Therefore, our next step is to examine the extrinsic evidence put forth by the parties in order to explain the terms of the document. The evidence presented, however, is sparse and fails to resolve the meaning of the contract. A question of fact therefore exists and summary judgment is denied with respect to the impact of the release on Fredericks' FCA claim.

---

5. Fredericks argues in his brief that he only released claims relating to his employment termination and, therefore, in essence concedes that claims relating to his employment termination are barred.