# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Brummel v. Grossman*, 2018 IL App (1st) 170516

</div>

| | |
|---|---|
| Appellate Court Caption | MARIA BRUMMEL, Executor of the Estate of Bruce Brummel, Deceased, Plaintiff-Appellant, v. RICHARD D. GROSSMAN; AGNES E. GROSSMAN; LAW OFFICES OF RICHARD D. GROSSMAN; RICHARD C. DANIELS; DANIELS, LONG & PINSEL, LLC; JASON S. MARKS; and NOONAN, PERILLO, POLENZANI & MARKS, LTD., Defendants (Richard D. Grossman; Agnes E. Grossman; Law Offices of Richard D. Grossman; Richard C. Daniels; Daniels, Long & Pinsel, LLC, Defendants-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0516 |
| Filed | June 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-13363, the Hon. John P. Callahan Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Julie A. Boynton and Donald L. Johnson, of Yorkville, for appellant.<br><br>James J. Sipchen and Thomas V.P. Draths, of Pretzel & Stouffer, Chtrd., of Chicago, for appellees Richard D. Grossman, Agnes E. Grossman, and Law Offices of Richard D. Grossman.<br><br>Joseph R. Marconi, David M. Macksey, and Brian C. Langs, of Johnson & Bell, Ltd., of Chicago, for other appellees. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
        Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion.


**OPINION**

¶ 1        The instant appeal arises from the trial court's grant of summary judgment against plaintiff Maria Brummel's amended complaint for legal malpractice committed by defendants, attorney Richard C. Daniels and the law firm of Daniels, Long & Pinsel, LLC (collectively, Daniels defendants) and attorneys Richard D. Grossman and Agnes E. Grossman and the Law Offices of Richard D. Grossman (collectively, Grossman defendants).[1] The lawsuit, originally filed by Bruce Brummel[2] (decedent) on December 30, 2014, alleged legal malpractice against defendants for negligently representing him during a case he filed in 2009 against his employer, Nicor Gas, for retaliatory discharge and for a violation of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)), in which he claimed that Nicor terminated his employment because he reported to various government agencies that the drinking water where he worked was contaminated. In the instant case, the trial court entered an order on April 13, 2016, limiting the amount of additional oral discovery sought by plaintiff. On February 3, 2017, the trial court granted defendants' motion for summary judgment, finding that the decedent could not have prevailed in the whistleblower case regardless of defendants' representation, since there was no evidence that the decedent was discharged for a protected activity, and that the doctrine of judicial estoppel barred the decedent's claim that he was able to return to work. Plaintiff appeals, arguing (1) that a genuine issue of material fact existed as to whether Nicor terminated the decedent's employment for reporting toxic work conditions to government authorities, and (2) that the doctrine of judicial estoppel did not bar his claim. Plaintiff also appeals the trial court's April 13, 2016, order limiting the amount of additional oral discovery, arguing that the trial court erred when it allowed her to conduct only one deposition prior to responding to the motion for summary judgment. For the following reasons, we affirm the judgment of the trial court.

¶ 2                                    BACKGROUND
¶ 3        The decedent's employer, Nicor Gas (Nicor), is a natural gas distribution company. The decedent began working for Nicor in December 1980 when he was 18 years old, and he remained with the company for over 22 years. The decedent was employed as a distribution technician with job duties that included repairing gas mains, operating machines, and directing

---

        [1]Plaintiff also alleged a separate count of legal malpractice against the Daniels defendants, attorney Jason S. Marks, and the law firm of Noonan, Perillo, Polenzani & Marks, Ltd. (collectively, Marks defendants) for their handling of a separate related worker's compensation and/or occupational diseases claim, but those counts are not at issue in this appeal.

        [2]Bruce Brummel passed away on June 3, 2015, during the pendency of his legal malpractice lawsuit. The trial court substituted Maria Brummel, the executor of his estate, as plaintiff on October 6, 2015.

and leading members of his crew. His job required physical labor, which he described as heavy, strenuous work. In 2001, the decedent and some of his coworkers at Nicor began to feel ill with symptoms of vomiting, diarrhea, abdominal pain, weakness, and fatigue. The decedent consulted a physician, who opined that the decedent's symptoms were caused by ingestion of chemicals. From 2001 to 2003, the decedent, as well as other employees, informed Nicor about his concerns that its drinking water was contaminated, but Nicor did not take any action to investigate or remedy the problem. The decedent also reported his concerns to the Occupational Safety and Health Administration in 2001 after Nicor did not take remedial action. The decedent conducted his own investigation, designed to discover the source of the chemicals at the Nicor facility where he worked, and he found that the drinking water in the break room connected to the flush line of the boiler, which allowed toxins to be emitted from the boiler into the drinking water consumed by Nicor employees. The decedent informed his union about the contaminated drinking water, but the union also ignored his requests for help. In late 2002, the decedent reported his findings concerning the connection between the boiler and the drinking water to the Occupational Safety and Health Administration for the second time, and he reported his findings to the City of Aurora, the Kane County Health Department, and the Illinois Department of Public Health. Although the decedent continued to consult his physician for gastrointestinal problems, his health continued to deteriorate, and he began a medical leave of absence on October 6, 2003.

¶ 4        On October 14, 2003, the City of Aurora's emergency response team and head plumbing inspector, Robert Thompson, inspected the plumbing in the boiler room and closed the facility. The inspection revealed that the drinking water was contaminated with methylene chloride and/or dichloro methane. Nicor later resolved the problem by installing backflow protection devices, which conformed the plumbing to city, state, and federal water safety regulations.

¶ 5        Once the decedent was on medical leave, Nicor placed him in its short-term disability plan governed by the company's Employee Benefit Association. In order to receive benefits, the Employee Benefit Association rules required the decedent to provide proof of his short-term disability.

¶ 6        On December 26, 2003, Nicor's senior labor and employee relations consultant, Jean Smolios, sent a letter to the decedent, advising him that Nicor had not received medical documentation to support his leave of absence, and that, since the Employee Benefit Association rules required the decedent to provide proof of his disability claim within 18 days of his absence, failure to provide the documentation could result in the suspension of his Employee Benefit Association benefits.

¶ 7        Smolios sent the decedent another letter on December 29, 2003, advising him that his Employee Benefit Association benefits would be suspended on January 12, 2004, if he did not provide medical documentation supporting his leave of absence.

¶ 8        On January 13, 2004, Nicor's medical services administrator, Eileen Boedigheimer, sent the decedent a letter, advising him that, since Nicor never received medical documentation supporting his leave of absence, his Employee Benefit Association benefits were suspended as of January 12, 2004, and that the suspension would be in effect until Nicor were to receive the appropriate documentation in the future. Boedigheimer also offered to fax another copy of the required form to the decedent's physician, as she previously discussed with the decedent on the telephone.

¶ 9 Three days later, on January 16, 2004, the decedent's physician, Dr. J. David Siegfried, faxed an "Employee Benefit Association Proof of Claim Form" and "Family and Medical Leave Act of 1993 Certification of Health Care Provider" form to Nicor, which stated that he diagnosed the decedent with chronic reflux disease and esophagitis. In the certification of health care provider form, Dr. Siegfried opined that the decedent was indefinitely disabled as of October 6, 2003, and that his disability was still "ongoing." Dr. Siegfried also answered in response to question 5.b that, from October 3, 2003, to October 3, 2004, the decedent would be "off intermittently when exacerbations occur or treatment is necessary." In response to question 5.c, Dr. Siegfried opined that the decedent "is unable to work from 10/6/03 thru indefinite." In response to question 7.a, which asked whether the decedent was able to perform work of any kind, Dr. Siegfried answered that the decedent "is able to work unless exacerbations occur, which is intermittently." Despite submitting these documents, Nicor never lifted the suspension of his Employee Benefit Association benefits.

¶ 10 Three months later, on March 16, 2004, Smolios mailed the decedent another letter, advising him that Nicor had not received medical documentation to support his October 6, 2003, leave of absence, and that Nicor would terminate his employment if he did not provide a medical certification in support of his leave of absence by April 2, 2004. Smolios noted that, in late December, Nicor "again requested that you provide documentation to support your absence and again you failed to provide evidence in support of your continued absence." In response, on March 26, 2004, the decedent sent Nicor copies of the same two forms that Dr. Siegfried faxed to Nicor on January 16, 2004, but provided Nicor no new information.

¶ 11 On April 2, 2004, Smolios mailed the decedent another letter, explaining that the documentation he provided on March 26, 2004, was the same information from October of 2003, and that Nicor had not received any documentation concerning his treatment or condition since that time. Smolios enclosed a blank proof of claim form to be completed by the decedent's physician, and she advised the decedent that, "[i]n order for the company to maintain you as an employee it is imperative that you supply the company's Medical Department with information regarding your current health status and treatment program." She further advised the decedent that, "[i]f this information is not received by the company as of Monday, April 12, [2004,] your employment with Nicor Gas will be terminated." Despite Smolios' letter, the decedent never submitted any additional medical documentation.

¶ 12 On April 15, 2004, Smolios sent the decedent another letter, advising him that his right to a leave of absence under the Family and Medical Leave Act of 1993 had expired and that Nicor was terminating his employment since he had not provided appropriate medical documentation to support his leave of absence despite numerous requests.

¶ 13 Later that year, on December 17, 2004, the decedent applied for disability benefits from the Social Security Administration, representing that he was disabled and unable to work since he began his leave of absence. The Social Security Administration denied his application, but an administrative law judge reversed the denial on appeal in a written decision on January 9, 2007. The administrative law judge determined that the decedent had been disabled and was "not able to engage in any substantial gainful activity" since October 6, 2003, that he was unable to perform his job as a distribution technician, and that his job skills did not transfer to other occupations within a residual functional capacity. Attorney George Weber represented the decedent in those proceedings.

¶ 14    In late 2005 or early 2006, the decedent discussed his health and work issues with defendant attorney Richard C. Daniels, a friend that the decedent had met through the Shriners. Defendant Daniels agreed to represent decedent in a workers' compensation and/or occupational diseases case and an action against Nicor for retaliatory discharge and violating the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). The decedent and defendant Daniels entered into a retainer agreement that defendant Daniels would receive a contingency fee of one-third of any recovery and that the decedent would pay all costs. Defendant Daniels also agreed to be paid his fee on the workers' compensation and/or occupational diseases action in accordance with the provisions of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2004)) and the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2004)). After the decedent retained defendant Daniels as counsel, defendant Daniels recommended that the decedent also retain defendant attorney Jason S. Marks as cocounsel for the Workers' Compensation Act and/or Workers' Occupational Diseases Act claim, since defendant Marks represented that he had experience in handling those cases. Defendant Marks agreed, defendants Daniels and Marks entered into a fee sharing agreement, and the decedent agreed. Defendant Daniels also recommended that the decedent retain defendant attorneys Richard and Agnes Grossman, who represented that they specialized in litigating "whistleblower" cases. The decedent agreed, and the Grossman defendants entered into an oral contingency agreement with the decedent. Defendant Daniels continued to supervise and participate in the whistleblower case on a regular basis.

¶ 15    In 2006, defendant Marks filed a workers' compensation and/or occupational diseases claim against Nicor on the decedent's behalf, claiming that the decedent was permanently disabled as a result of exposure to contaminated water while working at Nicor. Five years later, while the workers' compensation and/or occupational diseases claim was still pending, Nicor offered the decedent a lump sum settlement of $125,000, and decedent accepted it on October 20, 2011. An arbitrator approved the settlement five days later on October 25, 2011. The settlement order stated that the decedent claimed that he was "unable to work" and had an injury to his "whole body," which rendered him "permanently and totally disabled for any employment."

¶ 16    On April 13, 2009, after the decedent filed his workers' compensation and/or occupational diseases claim but before it settled, the Grossman defendants filed a lawsuit on the decedent's behalf against Nicor for retaliatory discharge and violation of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)) alleging that Nicor unlawfully terminated his employment in retaliation for him reporting to various government officials that he suspected the drinking water at the Nicor facility where he worked was contaminated. In the complaint, the decedent claimed that, after he reported the water contamination to various government agencies, Nicor began a course of conduct calculated to result in the termination of his employment, which included claims that his supervisors (1) did not respond to his requests for adequate staffing and then blamed him for alleged work deficiencies, (2) failed to process his medical leave documentation and deliberately frustrated his attempts to obtain disability benefits, and (3) told other employees that he was a "troublemaker," that they were going to "get" him, and to report his minor infractions so that negative information be placed in his file.

¶ 17    On January 30, 2013, the decedent was deposed in the whistleblower case. At his deposition, he testified that he had not worked or looked for work in the nine years since he began his leave of absence on October 6, 2003. He further testified that he had been unable to

work since he began his leave of absence and that he was physically incapable of performing his prior job at Nicor. He also testified that he was "very sick" and "on the ground sick" from the beginning of his leave of absence through at least 2007, when an administrative judge reversed the denial of his application for Social Security Administration benefits on appeal, and that he "had no idea" when he would have been able to return to any kind of employment.

¶ 18    The decedent testified that, after Smolios's letter of April 2, 2004, he never provided Nicor any further medical documentation to support his continuing leave of absence. The decedent also did not recall sending between October of 2003 and April 15, 2004, any other medical documentation to support his leave of absence to Nicor, other than the two forms signed by Dr. Siegfried. The decedent admitted that, other than the two forms faxed by Dr. Siegfried, he was unaware of any additional medical documentation in support of his leave of absence sent to Nicor prior to faxing those forms on January 16, 2004. The decedent further admitted that, although Dr. Siegfried signed the two forms in January of 2004, Dr. Siegfried had not examined or treated him since October 31, 2003. The decedent also testified that he did not recall if he tried to schedule an appointment with Dr. Siegfried to obtain the medical documentation or if he spoke with anyone at Nicor to ask for more time to obtain the documentation after receiving Smolios' April 2, 2004, letter.

¶ 19    The decedent further testified that he knew when he applied to the Social Security Administration for disability benefits that he needed to provide medical evidence that he was disabled and unable to perform any gainful activity and that he presented such evidence under penalty of perjury. He also testified that he agreed with the findings of the administrative law judge that he "had been disabled since October 6, 2003," that he was "not able to engage in any substantial gainful activity because of [his] determinable physical or mental impairment," that he had "not engaged in any gainful activity since October 6, 2003," and that he was "unable to perform any task relevant work."

¶ 20    On December 13, 2013, Nicor filed a motion for summary judgment, arguing that the decedent could not prove that Nicor discharged him in retaliation for his protected activities because the record showed that Nicor terminated the decedent's employment for failing to provide, after numerous requests, the required medical documentation to support his continuing medical leave of absence. Nicor also argued that the decedent could not prove damages, an essential element of his claims, because the record showed that he repeatedly admitted that he was disabled and unable to work since he began his leave of absence and that judicial estoppel barred him from claiming otherwise.

¶ 21    After a hearing on February 5, 2014, the trial court granted the motion for summary judgment, finding that there was no genuine issue of material fact that Nicor terminated the decedent's employment because it had not received medical documentation supporting his continuing leave of absence. The trial court also found that there was no genuine issue of material fact that the decedent was unable to work and that the decedent could not prove damages as a result. After the trial court granted the motion for summary judgment, the decedent retained new counsel, Edmund Moran, Jr., who then filed motion to reconsider the summary judgment finding, which the trial court denied.

¶ 22    On December 30, 2014, the decedent filed the instant lawsuit against the Daniels and Grossman defendants for legal malpractice for their handling of the whistleblower case against Nicor for retaliatory discharge and violating the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). The decedent claimed that the Grossman defendants did not adequately conduct

or respond to discovery, including a failure to respond to requests to admit that resulted in those requests being deemed admitted, which resulted in the trial court granting Nicor's motion for summary judgment. By failing to respond to the requests to admit, the decedent admitted that he did not work for any employer since he began his leave of absence, that he did not seek alternative employment since Nicor discharged him, that he was disabled and unable to perform the essential functions of his former job at Nicor since he began his leave of absence, that he was disabled and unable to perform any gainful employment due to disability since he began his leave of absence, and that he submitted an application to the Social Security Administration for disability benefits in which he represented, under penalty of perjury, that he was disabled and unable to work since October 6, 2003. The decedent also argued that the trial court granted summary judgment in favor of Nicor because the Grossman defendants failed to respond to the motion summary judgment or appear at the hearing on the motion on February 5, 2014. The lawsuit also alleged separate counts of legal malpractice against the Daniels and Grossman defendants for their handling of the decedent's related workers' compensation and/or occupational diseases claim; however, those counts are not at issue in this appeal.

¶ 23    In the complaint, the decedent also claimed that the trial court in the whistleblower case granted Nicor's motion to transfer venue and transferred the case from Cook County to Du Page County. The decedent alleged that Nicor served a discovery request on the Grossman defendants in January of 2010, and later that year, the trial court dismissed the case for want of prosecution, since the Grossman defendants failed to appear in court. The decedent alleged that the trial court later reinstated the case, but on November 17, 2010, the Grossman defendants voluntarily non-suited the case without informing the decedent. The decedent argued that the Grossman defendants subsequently refiled the whistleblower case again in an identical complaint on October 28, 2011—three days after the workers' compensation and/or occupational diseases settled—and the trial court ultimately transferred the case from Cook County to Du Page County. The decedent also alleged in the complaint that, in late 2012, he attended a case management conference but the Grossman defendants did not appear and the trial court told him that his attorneys had not appeared in court for some time. The decedent claimed he immediately called the Grossman defendants, who did not respond to his call. The decedent then called defendant Daniels, who assured him everything was fine, that he would call the Grossman defendants, and that the decedent did not need to worry about the handling of his case.

¶ 24    The decedent also claimed in the complaint that the trial court granted Nicor's motion to compel answers to discovery and set a deadline for the decedent to produce documents, but that the Grossman defendants only partially responded to the discovery requests, despite the decedent providing the Grossman and Daniels defendants with all the information needed to respond. The decedent alleged that, as a result, the trial court entered a sanction order against the decedent on May 16, 2013, barring him from offering any documents into evidence at trial that had not been produced. The same day, the trial court granted Nicor's motion for the request to admit deemed admitted, since the Grossman defendants failed to respond to the request to admit. The decedent also claimed that the Grossman defendants never served discovery requests on Nicor.

¶ 25    The decedent also claimed that, in 2013, Nicor withdrew its motion for summary judgment and began settlement discussions with the decedent. The Grossman defendants initially told the decedent that Nicor offered $240,000 to settle all claims, then later told him that Nicor

reduced the amount to $50,000, and again later reduced the offer to $20,000. Nicor then refiled its motion for summary judgment, since it was unable to settle the whistleblower case with the decedent.

¶ 26 The decedent also alleged that he had defenses that would have defeated Nicor's motion for summary judgment, but neither the Grossman defendants nor the Daniels defendants told him about the motion and the consequences of not responding to it. The decedent alleged that, for unknown reasons, neither the Grossman defendants nor the Daniels defendants responded to Nicor's motion for summary judgment. The decedent argued that, since the Grossman and Daniels defendants (1) did not develop evidence, including taking the deposition of persons who could support the decedent's claim that he was adversely treated and wrongfully discharged, (2) did not respond to the motion for summary judgment, (3) did not request additional time to respond to the motion, (4) did not tell the decedent that he would need to retain new counsel to respond the motion, and (5) did not appear at the hearing on the motion, the trial court granted the summary judgment motion and dismissed the decedent's case. The decedent claimed that he personally attended the hearing on the motion for summary judgment and requested the trial court to grant him time to find a new attorney and respond to the motion, but he claimed that the trial court denied his request due in part to the Grossman defendants' dilatory tactics and lack of attention to the case throughout the litigation.

¶ 27 The decedent's legal malpractice complaint also alleged new information that did not appear in the whistleblower complaint. The decedent claimed that Nicor's course of adverse conduct against him included significantly increasing the number of assignments he was expected to accomplish, significantly increasing quality control inspection, sending him home without pay for nonexistent offenses, taking amenities from him and his team that other teams were allowed to have such as microwaves and water coolers, singling him out and acting angrily towards him, ordering him to report his time in a certain fashion and then accusing him of stealing time when he followed management directions, providing written reprimands for his minor work infractions when in the past he was issued only verbal warnings, withdrawing a promotion that was offered to him, and singling out his team by preparing photographic records of the work his team performed.

¶ 28 The decedent also newly alleged in the legal malpractice complaint that he had asked Nicor to assign him to a less-physically stressful job but Nicor did not accommodate him, despite the provisions of his union's contract with Nicor, which provided that Nicor had an obligation to attempt to locate a different job to accommodate an employee's disability. The decedent claimed that he also sought a referral to Dr. Katherine Duvall, a physician who specializes in work-related injuries, but he could not obtain a medical referral. The decedent claimed that he told Nicor personnel that he was having difficulty obtaining additional medical documentation due to his poor health and that Nicor's nurse told him that he should not worry because she would take care of following up on the documentation, which never happened.

¶ 29 On May 15, 2015, the decedent filed a motion to expedite discovery and advance trial, since his physician diagnosed that his medical condition was terminable. On May 19, 2015, the trial court granted the motion except for his request to advance the trial. Defendants submitted written discovery, and the decedent answered on May 28, 2015. The trial court scheduled the decedent's deposition for June 3, 2015, but the decedent passed away that day before he was deposed. The trial court substituted Maria Brummel, the executor of his estate, as plaintiff on October 6, 2015.

¶ 30    Neither the decedent nor plaintiff submitted written discovery until January 7, 2016, and the Grossman defendants answered. Plaintiff also did not notice any depositions, other than the decedent's, before the Grossman defendants filed their motion for summary judgment.

¶ 31    On February 1, 2016, the Grossman defendants filed a motion for summary judgment, and the Daniels defendants joined. In the motion, the Grossman defendants argued they were entitled to entry of summary judgment because the decedent's deposition testimony in the whistleblower case alleged foreclosed plaintiff's ability to prove a "case within a case." Specifically, the Grossman defendants argued the decedent's deposition testimony established that (1) Nicor terminated his employment, since he failed to provide required medical documentation to support his leave of absence despite numerous requests from his employer, (2) he was permanently and totally disabled and unable to perform the essential functions of his job at Nicor, and (3) he is judicially estopped from claiming otherwise, since he previously admitted he was totally disabled and unable to work in proceedings before the Social Security Administration and Illinois Workers' Compensation Commission.

¶ 32    On March 3, 2016, after the Grossman defendants filed their motion for summary judgment, plaintiff filed a motion to take additional oral discovery, which attached an affidavit from her counsel, Julie Boynton, naming at least 32 witnesses whom plaintiff argued needed to be deposed before plaintiff could respond to the motion for summary judgment. Plaintiff later amended the motion by substituting her attorney's affidavit with her own affidavit. In the motion, plaintiff claimed that, at the time defendants filed their motion for summary judgment motion, the parties had neither completed written discovery nor taken depositions.

¶ 33    In response to plaintiff's motion for additional discovery, the Grossman defendants filed a motion to strike plaintiff's Illinois Supreme Court Rule 191(b) affidavit and for entry of a protective order, arguing that the affidavit was defective, since it did not aver that the witnesses plaintiff sought to depose were the only people with knowledge of material facts necessary to respond to the motion for summary judgment. See Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). The Grossman defendants further argued that all material facts relating to their summary judgment motion were contained in the decedent's deposition testimony in the whistleblower case and that the decedent's testimony demonstrated that he is the only person with knowledge of facts relevant to the motion, rather than Nicor employees or other witnesses named by plaintiff.

¶ 34    At oral argument on the motion for additional discovery on April 13, 2016, counsel for the Grossman defendants claimed that the motion for summary judgment was straightforward and narrow in scope, arguing that it was based entirely on the admissions the decedent made in his deposition in the whistleblower case, as well as admissions the decedent made before the Social Security Administration and Illinois Workers Compensation Commission. The Grossman defendants further argued that no amount of discovery could undo the decedent's binding admissions, which were dispositive of plaintiff's legal malpractice case. The trial court then granted plaintiff's motion for additional discovery in part and denied it in part, allowing plaintiff one deposition before responding to the Grossman defendants' motion for summary judgment. The trial court recommended that plaintiff depose Jean Smolios, finding that deposing her would make the most sense, since she was a former human resources vice president who authored the letter to the decedent advising him that if they did not receive the medical verification of his present condition of ill-being, his employment would be terminated.

¶ 35    The trial court that day also granted plaintiff leave to file an amended complaint concerning the legal malpractice claims against the Daniels and Marks defendants concerning

the workers' compensation and/or occupational diseases case only. The order further stated that plaintiff was not given leave to amend the pleadings concerning the Daniels and Grossman defendants' handling of the whistleblower case. On April 22, 2016, plaintiff filed an amended complaint in the instant lawsuit, with the counts concerning the whistleblower case remaining the same. On August 25, 2016, the trial granted defendants' motion to dismiss the counts concerning the workers' compensation and/or occupational diseases claim, finding that the decedent did not raise those counts within the two-year statute of limitations governing legal malpractice actions (735 ILCS 5/13-214.3 (West 2014)), and we later affirmed the trial court's dismissal on appeal (see *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 44).

¶ 36    Smolios was deposed on October 17, 2016, and she testified that she had terminated the decedent's employment because the Employee Benefit Association medical department advised her that he did not provide medical documentation to support his leave of absence. She testified that the Employee Benefit Association rules require claims to be current every 30 days and that the decedent only submitted medical documentation concerning an examination during the first month of his leave of absence. However, Smolios admitted that the proof of claim form did not explain the 30-day requirement.

¶ 37    Plaintiff responded to the Grossman defendants' motion for summary judgment on November 30, 2016, arguing that the evidence showed that the decedent was discharged for reporting toxic work conditions to various government agencies and that he was not discharged for his failing to provide medical documentation to support his continuing leave of absence. Plaintiff further claimed that the evidence showed that, after the decedent reported the toxic work conditions, Nicor engaged in a calculated course of retaliation against him, which culminated in the termination of his employment. Plaintiff also argued that judicial estoppel did not bar the decedent's claims in either the whistleblower case or the instant case. Concerning the trial court's ruling on her motion for additional discovery, plaintiff stated she had been prejudiced by not being allowed to undertake discovery before responding to the summary judgment motion, and she renewed her request for additional discovery.

¶ 38    After arguments on February 3, 2017, the trial court granted the Grossman defendants' motion for summary judgment, finding (1) that the decedent's prior admissions established that he was disabled and unable to work, (2) that there was no evidence that Nicor terminated the decedent's employment in retaliation for a protected activity, and (3) that the doctrine of judicial estoppel barred the decedent's claim that he was able to return to work. The trial court found that the whistleblower case was "unwinnable" for the decedent and that the "die was cast in this particular matter by [the decedent] even before the time the Grossman Defendants were in play and had proceedings involving this matter." The trial court also determined that there was no evidence that the decedent could have produced to prevail in the whistleblower case that could have overcome his failure to produce the current medical evidence of his disability. Plaintiff now appeals the trial court's granting summary judgment in favor of the defendants.

¶ 39                                      ANALYSIS

¶ 40    On appeal, plaintiff claims that the trial court erred when it granted defendants' motion for summary judgment in the legal malpractice case, arguing (1) that a genuine issue of material fact existed in the whistleblower case as to whether Nicor discharged the decedent for reporting toxic work conditions to governmental authorities and (2) that the doctrine of judicial estoppel did not bar his claims. Alternatively, plaintiff argues that the trial court in the legal

- 10 -

malpractice case erred when it allowed her to conduct only one deposition prior to responding to the motion for summary judgment. For the following reasons, we affirm the judgment of the trial court.

¶ 41                                    I. Summary Judgment

¶ 42    Plaintiff first argues that the trial court erred when it granted summary judgment in favor of defendants in the legal malpractice case, arguing that there existed a genuine issue of material fact that Nicor terminated the decedent's employment for toxic work conditions to governmental authorities. Defendants argue that, due to the decedent's deposition testimony in the whistleblower case, plaintiff could not prove a claim for legal malpractice since the decedent would not have prevailed in the whistleblower case regardless of the alleged conduct of his attorneys. In that case, the trial court found that the decedent could not establish a causal relation between the termination of his employment and his whistleblowing activities due to his own admissions in his deposition testimony, which established that (1) Nicor terminated his employment for his failure to provide required medical documentation to support his continuing leave of absence after numerous requests from his employer and (2) he was permanently disabled and unable to perform the essential functions of his job at Nicor. Defendants also argue that the decedent was judicially estopped from claiming in the whistleblower case that he was not totally disabled and unable to work, since he previously admitted otherwise in proceedings before the Social Security Administration and Illinois Workers' Compensation Commission. For the following reasons, we affirm the trial court's award of summary judgment in favor of defendants.

¶ 43    A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 44    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

- 11 -

¶ 45        In the instant case, the trial court granted defendants' motion for summary judgment on plaintiff's legal malpractice claim. The elements of a legal malpractice claim are well established. To prevail on a cause of action for legal malpractice, a plaintiff must plead and prove sufficient facts to establish (1) that the defendant attorney owed the plaintiff client a duty of due care arising from an attorney-client relationship, (2) that the attorney breached that duty, (3) that the client suffered an injury in the form of actual damages, and (4) that the attorney's breach was the proximate cause of those actual damages. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008) (citing *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 199 (2006)); *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 174 (2004); *Serafin v. Seith*, 284 Ill. App. 3d 577, 586-87 (1996)).

¶ 46        The fact that an attorney owed a duty of care and breached it is not enough to sustain a cause of action. *Fox*, 382 Ill. App. 3d at 295 (citing *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005)). Even if an attorney was negligent, a plaintiff cannot recover unless that negligence proximately caused actual damages. *Fox*, 382 Ill. App. 3d at 295 (citing *Northern Illinois*, 216 Ill. 2d at 306-07). Thus, both proximate cause and actual damages are essential to a viable cause of action. *Fox*, 382 Ill. App. 3d at 295 (citing *Northern Illinois*, 216 Ill. 2d at 306-07). "To satisfy the proximate cause aspect of a malpractice action, the plaintiff must essentially plead and prove a 'case within a case,' meaning that the malpractice complaint is dependent on the underlying lawsuit." *Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 788 (2002) (citing *Sharpenter v. Lynch*, 233 Ill. App. 3d 319, 323 (1992)). The plaintiff must plead sufficient facts to establish that, "but for" the negligence of the attorney, the client would have succeeded in the underlying suit. *Fox*, 382 Ill. App. 3d at 299; *Cedeno*, 347 Ill. App. 3d at 174; *Serafin*, 284 Ill. App. 3d at 587. "Because legal malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence has resulted in the loss of the underlying action." *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525 (1995) (citing *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 122 (1986)).

¶ 47        Plaintiff claims that the decedent had defenses in the whistleblower case that would have defeated Nicor's motion for summary judgment, but that neither the Grossman defendants nor the Daniels defendants told him about the motion and that neither filed a response. Plaintiff further claims that the trial court granted the summary judgment motion and dismissed the case, since the Grossman and Daniels defendants (1) did not fully develop evidence by deposing witnesses who could have supported the decedent's claims, (2) did not respond to the motion for summary judgment, (3) did not request additional time to respond to the motion, (4) did not advise the decedent that he would need to retain new counsel to respond to the motion, and (5) did not appear at the hearing on the motion. Plaintiff argued that the decedent personally attended the hearing on the motion for summary judgment and requested the trial court to grant him time to hire a new attorney to respond to the motion, but he claimed that the trial court denied his request due in part to the Grossman defendants' dilatory tactics and lack of attention to the case throughout the litigation.

¶ 48        To determine whether the actions of the Grossman and Daniels defendants amounted to legal malpractice, we must consider whether their actions were the proximate cause of the dismissal of the whistleblower case. *Fox*, 382 Ill. App. 3d at 299. The whistleblower case raised claims of common law retaliatory discharge and violation of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). In Illinois, a noncontracted employee is one who serves

at the employer's will, and the employer may discharge such an employee for any reason or no reason. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009). "The accepted general rule is that in an employment at will there is no limitation on the right of an employer to discharge an employee." *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985). However, an exception to the general rule of at-will employment arises when there has been a retaliatory discharge of the employee. *Turner*, 233 Ill. 2d at 500 (citing *Price*, 109 Ill. 2d at 67). To prove a valid cause of action for retaliatory discharge, an employee must prove that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner*, 233 Ill. 2d at 500. Similarly, to establish a claim under the Whistleblower Act, an employee must demonstrate that his or her employer retaliated against the employee for disclosing information to a government or law enforcement agency that he or she had reasonable cause to believe disclosed a violation of a state or federal law, rule, or regulation. *Zuccolo v. Hannah Marine Corp.*, 387 Ill. App. 3d 561, 566 (2008); 740 ILCS 174/15(b) (West 2008).

¶ 49 The requirement that the discharge be in retaliation for an employee's activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 31. The employer's motive in discharging the employee is the ultimate issue when deciding the element of causation. *Michael*, 2014 IL 117376, ¶ 31. "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992).

¶ 50 We find that the actions of the Grossman defendants were not the proximate cause of the trial court dismissing the whistleblower case because the decedent would not have prevailed in that case. The element of causation was not met because the employer had a valid basis to terminate the decedent's employment when he failed to provide the current medical documentation of his claimed disability. The evidence before the trial court showed that Nicor repeatedly requested the decedent to provide medical documentation to support his continuing leave of absence and that it terminated his employment after he failed to provide current documentation as required.

¶ 51 The evidence shows that, once the decedent was on medical leave, Nicor placed him in its short-term disability plan governed by the company's Employee Benefit Association, which required the decedent to provide proof of his short-term disability in order to receive benefits. On December 26, 2003, Smolios sent the decedent a letter, advising him that Nicor had not received medical documentation to support his medical leave, and that, since the Employee Benefit Association rules required the decedent to provide proof of his disability claim within 18 days of his absence, failure to provide the documentation could result in the suspension of his Employee Benefit Association benefits. Smolios sent the decedent another letter on December 29, 2003, advising him that his Employee Benefit Association benefits would be suspended on January 12, 2004, if he did not provide medical documentation supporting his leave of absence. On January 13, 2004, Boedigheimer sent the decedent a letter advising him that, since Nicor never received medical documentation supporting his leave of absence, his Employee Benefit Association benefits were suspended until Nicor received the proper documentation, effective as of January 12, 2004. Boedigheimer also offered to fax another copy of the required form to the decedent's physician, as she previously told the decedent on the telephone.

¶ 52        Three days later, on January 16, 2004, Dr. Siegfried faxed an "Employee Benefit Association Proof of Claim Form" and "Family and Medical Leave Act of 1993 Certification of Health Care Provider" form to Nicor, which stated that he diagnosed the decedent with chronic reflux disease or esophagitis. In the certification of health care provider form, Dr. Siegfried opined that the decedent was indefinitely disabled as of October 6, 2003, and that his disability was still "ongoing." Dr. Siegfried also opined that, from October 3, 2003, to October 3, 2004, the decedent would be "off intermittently when exacerbations occur or treatment is necessary," and that the decedent was "unable to work from 10/6/03 thru indefinite." In response to a question on the form asking whether the decedent was able to perform work of any kind, Dr. Siegfried answered that the decedent "is able to work unless exacerbations occur, which is intermittently."

¶ 53        Three months later, on March 16, 2004, Smolios mailed the decedent another letter, advising him that Nicor had not received medical documentation to support his leave of absence, and that Nicor would terminate his employment if he did not provide a medical certification in support of his leave of absence by April 2, 2004. Smolios noted in the letter that, in late December, Nicor "again requested that you provide documentation to support your absence and again you failed to provide evidence in support of your continued absence." In response, on March 26, 2004, the decedent sent Nicor copies of the same two forms that Dr. Siegfried faxed to Nicor on January 16, 2004, and provided Nicor no new information. On April 2, 2004, Smolios mailed the decedent another letter explaining that the documentation he provided on March 26, 2004, was the same information from October of 2003, and that Nicor had not received any documentation concerning his treatment or condition since that time. Smolios enclosed a blank proof of claim form to be completed by the decedent's physician, and she advised the decedent that, "[i]n order for the company to maintain you as an employee it is imperative that you supply the company's Medical Department with information regarding your current health status and treatment program." She further advised the decedent that, "[i]f this information is not received by the company as of Monday, April 12, [2004,] your employment with Nicor Gas will be terminated." On April 15, 2004, Smolios sent the decedent another letter advising him that his right to a leave of absence under the Family and Medical Leave Act of 1993 had expired and that Nicor was terminating his employment since he had not provided appropriate medical documentation to support his continuing leave of absence despite numerous requests.

¶ 54        At his deposition in the whistleblower case, the decedent testified that, after Smolios's letter of April 2, 2004, he never provided Nicor any further medical documentation to support his continuing leave of absence. The decedent also did not recall sending, between October of 2003 and April 15, 2004, any other medical documentation to support his leave of absence to Nicor, other than the two forms signed by Dr. Siegfried. The decedent admitted that he was unaware of any additional medical documentation in support of his leave of absence sent to Nicor prior to faxing those two forms. The decedent further admitted that, although Dr. Siegfried signed the two forms in January of 2004, Dr. Siegfried had not examined or treated him since October 31, 2003. The decedent also testified that he did not recall if he tried to schedule an appointment with Dr. Siegfried to obtain the medical documentation or if he spoke with anyone at Nicor to ask for more time to obtain the documentation after receiving Smolios' April 2, 2004, letter.

¶ 55    Illinois courts have found that "medical inability to work was a 'legitimate nondiscriminatory reason' for discharge." *LaPorte v. Jostens, Inc.*, 213 Ill. App. 3d 1089, 1093 (1991) (quoting *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1359 n.11 (7th Cir. 1985)). "Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position." *Hartlein*, 151 Ill. 2d at 159-60 (citing *Horton*, 776 F.2d 1351). Also, an employer is not obligated to reassign a disabled employee to another position rather than terminate his or her employment. See *LaPorte*, 213 Ill. App. 3d at 1093. An employer may also discharge an employee for excess absenteeism caused by a compensable injury. *Slover v. Brown*, 140 Ill. App. 3d 618, 621 (1986). Furthermore, courts have previously affirmed summary judgment in favor of an employer in retaliatory discharge cases where an employee could not prove causation. See *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680, 688 (1992) (finding no issue of material fact concerning the employee's medical inability to return to work, which was a legitimate nondiscriminatory reason for discharge); *LaPorte*, 213 Ill. App. 3d at 1094 (same); *McCoy v. Maytag Corp.*, 495 F.3d 515, 523-24 (7th Cir. 2007) (affirming summary judgment in favor of the employer on a retaliatory discharge claim where the employee failed to provide current medical documentation to support his absence from work in accordance with company policy).

¶ 56    At the time of his discharge, the decedent had been on a leave of absence for over seven months and had not provided Nicor with any current medical documentation other than the forms from Dr. Siegfried that were based on his examination of the decedent during the first month of his leave of absence. In light of this evidence, the trial court in the whistleblower case found that there was no genuine issue of material fact that the decedent failed to provide Nicor support for his medical leave and that they terminated his employment as a result. Since Nicor had a valid basis for discharging the decedent, the trial court found that he could not prevail as a matter of law and granted summary judgment in favor of Nicor.

¶ 57    In the instant legal malpractice case, plaintiff argues that defendants mishandled the decedent's case by failing to develop evidence, take depositions, or respond to the motion for summary judgment; however, even if defendants had done all of this, the record shows that it would not have been enough to create a genuine issue of material fact that Nicor terminated the decedent's employment because he failed to provide current medical documentation to support his leave of absence as it required. As a result, defendants did not proximately cause actual damages to the decedent, and the trial court did not err when it granted defendants' motion for summary judgment dismissing the legal malpractice case.

¶ 58    Additionally, defendants were not the proximate cause of actual damages to the decedent in the whistleblower case, since the evidence shows that he was totally disabled and unable to work due to his health, and he could not recover compensatory damages as a result. "Damages for an injury to the plaintiff are an essential element of any tort cause of action." *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 928 (2010). "[A] plaintiff is not entitled to retaliatory discharge damages during the time of his total incapacity to work." *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 559 (1992). "[T]ime when an employee is away from work because of his own infirmity, rather than as a consequence of his employer's tortious conduct, does not qualify for retaliatory discharge damages." *Kritzen*, 226 Ill. App. 3d at 559-60. "Lost wages attributable solely to one's infirmity do not naturally flow from the commission of retaliatory discharge." *Kritzen*, 226 Ill. App. 3d at 560.

¶ 59    The decedent testified at his deposition that, since he began his medical leave of absence on October 6, 2003, he was medically unable to perform his job as a distribution technician at Nicor. At the time of the deposition in 2013, the decedent testified that he had not worked or searched for work in the nine years since he began his leave of absence on October 6, 2003. Additionally, the decedent applied for disability benefits from the Social Security Administration, representing that he was disabled and unable to work since he began his leave of absence. Although the Social Security Administration initially denied his application, an administrative law judge reversed the denial on appeal, finding that the decedent had been disabled since October 6, 2003, and that he was unable to perform his job at Nicor. The decedent testified at his deposition that he agreed with the administrative law judge's findings that he "had been disabled since October 6, 2003," that he was "not able to engage in any substantial gainful activity because of [his] determinable physical or mental impairment," that he had "not engaged in any gainful activity since October 6, 2003," and that he was "unable to perform any relevant task work." In addition, the decedent settled his workers' compensation and/or occupational diseases claim with Nicor in 2011, and the settlement order stated that the decedent claimed that he was "unable to work" and had an injury to his "whole body," which rendered him "permanently and totally disabled for any employment."

¶ 60    In light of this overwhelming evidence, there existed no genuine issue of material fact that the decedent was disabled and unable to return to his job at Nicor. Since the decedent was unable to work, he could not recover compensatory damages in the whistleblower case. As a result, defendants in the instant case did not proximately cause an actual injury to the decedent when the trial court dismissed the whistleblower case, since he could not recover compensatory damages in that case, and the trial court did not err when it granted summary judgment in the legal malpractice case in favor of defendants.

¶ 61    Plaintiff claims that defendants could have proven the element of causation because the decedent could have shown that Nicor subjected him to a course of adverse treatment after he reported the water contamination to governmental authorities, which culminated in the termination of his employment. Plaintiff argues that the evidence could have shown that Nicor's supervisors significantly increased the number of assignments the decedent was expected to accomplish, significantly increased quality control inspection, sent him home without pay for non-existent offenses, took amenities from him and his team that other teams were allowed to have such as microwaves and water coolers, singled him out and acted angrily towards him, ordered him to report his time in a certain fashion and then accused him of stealing time when he followed management directions, provided written reprimands for his minor work infractions when in the past he was issued only verbal warnings, withdrew a promotion that was offered to him, and singled out his team by preparing photographic records of the work his team performed. Plaintiff claims that Nicor's course of conduct continued after the decedent began his leave of absence when it refused to acknowledge his injury was work-related, refused to accept the medical documentation he provided, failed to explain to him how the documentation he provided was insufficient, and misled him when Boedigheimer told him that she was contacting his physician and that he did not need to worry about obtaining the medical documentation. Plaintiff also argues that, in essence, Nicor required that the decedent consult a physician for medical documentation and then refused to authorize treatment when he tried to visit Dr. Duvall.

¶ 62    However, the elements of retaliatory discharge require the decedent to show that he was discharged (*Turner*, 233 Ill. 2d at 500), and alleged adverse treatment is not actionable under a theory of retaliatory discharge (see *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 153 (1999)). As a result, plaintiff cannot recover for retaliatory discharge solely based on Nicor's actions that fell short of discharging the decedent.

¶ 63    Also, as stated, there was no genuine issue of material fact that Nicor terminated the decedent's employment as a result of his failure to provide current medical documentation of his continuing leave of absence. The overwhelming evidence shows that Smolios repeatedly advised the decedent that he needed to provide current medical documentation, which he failed to provide before the noticed deadline. As a result, the allegations that Nicor treated the decedent adversely prior to his leave of absence does not create a genuine issue of fact that Nicor's stated reason for discharging him was fabricated pretext for another illegitimate reason. Furthermore, whether Nicor subjected the decedent to adverse treatment is immaterial, since he testified that he was disabled and unable to work at the time of his leave of absence. Since he could not work, he could not have proven damages, which is an essential element of his retaliatory discharge claim. *Reuter*, 397 Ill. App. 3d at 928; *Kritzen*, 226 Ill. App. 3d at 559.

¶ 64    Plaintiff argues that the decedent still could have prevailed on a claim for violation of the Whistleblower Act since that statute provides for damages for "any action against an employee." 740 ILCS 174/30 (West 2004). However, the Whistleblower Act did not become effective until January 1, 2004, so the decedent could not have prevailed on a claim concerning Nicor's conduct prior to the statute's enactment. Plaintiff cites *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003), in support of her argument that Nicor's prior conduct should be considered under the doctrine of a continuing tort. Plaintiff points to the *Feltmeier* court's finding that "[a] pattern, course, and accumulation of acts can make an individual's conduct 'sufficiently extreme to be actionable, whereas one instance of such behavior might not be.' " *Feltmeier*, 207 Ill. 2d at 274 (quoting *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 746 (2001)). However, the continuing tort doctrine explained in *Feltmeier* concerned the applicability of the statute of limitations in a claim for intentional infliction of emotional distress. *Feltmeier*, 207 Ill. 2d at 279. The *Feltmeier* court found that, "under the 'continuing tort' or 'continuing violation' rule, 'where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.' " *Feltmeier*, 207 Ill. 2d at 278 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002)). In the instant case, plaintiff argues entirely different circumstances by claiming that the principles of the continuing tort doctrine extend to finding liability for actions that would have violated a statute prior to that statute's enforcement. The Whistleblower Act does not state that its provisions apply retroactively, and we cannot say that Nicor's conduct prior to the enactment of the statute was actionable. See *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 182 (1995) ("statutes are presumed to apply prospectively only and will not be given retroactive effect absent clear language within the statute indicating that the legislature intended such effect").

¶ 65    Plaintiff additionally argues that Nicor violated the collective bargaining agreement with the union by not attempting to place the decedent in a less-strenuous job that he could perform. Plaintiff cite to a provision of the collective bargaining agreement, which states that:

> "In the case of a regular employee or part-time regular employee who has given long and faithful service and who is unable to carry on his/her regular work to advantage,

[Nicor] will attempt to place such employee on work, which he/she is able to perform. In such cases, the other provisions of this Article shall not apply."

The collective bargaining agreement further stated that, "[i]f a regular employee or part-time regular employee becomes disabled and is unable to perform his/her regular work to advantage, [Nicor] will attempt to place the employee on work within the employee's capabilities." Plaintiff argues that the evidence shows that Nicor acted in bad faith and intended to discharge the decedent for reporting toxic work conditions, since it did not attempt to accommodate his disability by placing him in a less-strenuous job.

¶ 66    However, whether Nicor attempted to place the decedent in another job position is immaterial where he testified and represented to the Social Security Administration and Illinois Workers' Compensation Commission that he was disabled and unable to work during his leave of absence. It follows that, if the decedent could not work, then Nicor could not possibly place him in a job that he could perform. Also, the collective bargaining agreement further provides that Nicor retained the right to discharge employees for proper cause. The collective bargaining agreement stated that "[t]he management of [Nicor] and the direction of the working forces herein, including the right to hire, suspend, or discharge for proper cause, promote, demote, transfer and layoff because of lack of work or for other reasons, are vested in [Nicor], except as otherwise specifically provided in this Agreement." Although the collective bargaining agreement provided that Nicor would attempt to place a disabled employee on work within the employee's capabilities, the agreement provided no guarantee of a new job placement or an absolute right to such placement.

¶ 67    Additionally, even if Nicor did not attempt to place the decedent another job position, that would not have raised a genuine issue of fact that it had another illegitimate motive to discharge him. As stated, the evidence overwhelmingly shows that Nicor terminated the decedent's employment, since he failed to provide current medical documentation to support his continuing leave of absence, despite numerous requests. Since there existed no genuine issue of material fact that Nicor discharged the decedent for failing to provide support for his medical leave, defendants in the legal malpractice case did not proximately cause actual damages to the decedent. Additionally, defendants in the legal malpractice case did not proximately cause actual damages, since the decedent could not recover compensatory damages in the whistleblower case due to his inability to work during his leave of absence. As a result, the trial court did not err when it granted defendants' motion for summary judgment dismissing the legal malpractice case.

¶ 68                                    II. Judicial Estoppel

¶ 69    Plaintiff next argues that the trial court erred when it granted summary judgment in favor of defendants in the legal malpractice case, since judicial estoppel did not bar the decedent's claim. Defendants argue that, even if the decedent did not testify in his deposition testimony that he was unable to return to work during his leave of absence, judicial estoppel bars him from claiming otherwise due to his prior admissions to the Social Security Administration and the Illinois Workers' Compensation Commission. For the following reasons, we affirm the trial court's award of summary judgment in favor of defendants.

¶ 70    The doctrine of judicial estoppel provides that " 'a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding.' " *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill.

App. 3d 453, 460 (2003) (quoting *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996)). The purpose of the doctrine is " 'to promote the truth and to protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment.' " *Loffredi*, 342 Ill. App. 3d at 460 (quoting *Bidani*, 285 Ill. App. 3d at 550). The five elements necessary for the application of judicial estoppel include the following: " 'the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intended for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it.' " *Loffredi*, 342 Ill. App. 3d at 460 (quoting *People v. Caballero*, 206 Ill. 2d 65, 80 (2002)). Judicial estoppel must be proved by clear and convincing evidence. *Seymour v. Collins*, 2015 IL 118432, ¶ 39. Since judicial estoppel is an equitable doctrine invoked by the court at its discretion, we review a trial court's invocation of the doctrine under the abuse-of-discretion standard. *Seymour*, 2015 IL 118432, ¶ 41. A trial court abuses its discretion "only where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1150 (2005) (citing *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 71    Prior to the instant legal malpractice case, the decedent applied for disability benefits from the Social Security Administration, where he represented that he was disabled and unable to work since he began his leave of absence. An administrative law judge reversed the denial of his application on appeal, finding that the decedent had been disabled since October 6, 2003, and that he was unable to perform his job at Nicor. The decedent also settled his workers' compensation and/or occupational diseases claim with Nicor, and he signed the settlement order, which stated that he claimed injury to his "whole body," rendering him "permanently and totally disabled for any employment." In the instant case, the decedent claimed that he desperately wanted to return to work but Nicor would not accommodate him by placing him in a "less physically stressful job."

¶ 72    The decedent's prior position that he was totally disabled and unable to work is factually inconsistent with the position that he was able to return to a different job at Nicor. The decedent's statements were also made in judicial or quasi-judicial proceedings, and he intended the trier of fact to accept the fact of the truth of the facts he alleged so that he would receive benefits as a result. An administrative law judge accepted the decedent's statements that he was disabled and reversed the denial of his application for Social Security Administration disability benefits, and an arbitrator accepted the decedent's representations when it approved the settlement of his workers' compensation and/or occupational diseases case, for which the decedent received $125,000 in compensation. We cannot say that the trial court's finding that judicial estoppel applies is arbitrary, fanciful, or unreasonable, or that no reasonable person would make that finding. As a result, the trial court did not abuse its discretion when it found that the doctrine of judicial estoppel applies, and the decedent was barred from claiming that he was able to return to work at Nicor. Since he could not claim that he was able to return to work, he could not recover compensatory damages in the whistleblower case and, as a result, the defendants in the instant legal malpractice case did not proximately cause an actual injury to the decedent. As a result, the trial court did not err when it granted summary judgment in the legal malpractice case in favor of defendants.

¶ 73    Plaintiff argues that, "for judicial estoppel to apply, the two positions taken must be 'totally inconsistent' " (emphasis omitted) (*Wolfe v. Wolf*, 375 Ill. App. 3d 702, 705 (2007) (quoting *Bidani*, 285 Ill. App. 3d at 550)), and that the decedent's representations to the Social Security Administration and the Illinois Workers' Compensation Commission were not inconsistent with his claims in the whistleblower case. As to the decedent's representations to the Social Security Administration, plaintiff argues that the administrative law judge found that, although the decedent could not perform his job at Nicor as a distribution technician, he was able to perform some type of sedentary work. Plaintiff claims that judicial estoppel does not apply, since the administrative law judge's findings were not inconsistent with the decedent's claim that he was able to return to work in a "less physically stressful job" at Nicor.

¶ 74    However, the position that the decedent was able to work in a less-physically stressful job during his leave of absence is totally inconsistent with the administrative law judge's findings that the decedent was "not able to engage in any substantial gainful activity" since October 6, 2003. Although the judge found that the decedent had the "residual functional capacity to perform sedentary work," he determined that the decedent "is unable to perform any past relevant work," that his "job skills do not transfer to other occupations within the residual functional capacity," and that his "limitations so narrow the range of work that [he] might otherwise perform that a finding of 'disabled' is appropriate." The judge's order notes that, to support a finding that the decedent is not disabled, the Social Security Administration had the burden to demonstrate "that other work exists in significant numbers in the national economy that [the decedent] can do." In other words, the administrative judge's findings show that the decedent's disability was so significant that, not only was he unable to perform any past relevant work, but that he did not even have the ability to perform any job that existed in significant numbers in the national economy. As a result, the representations set forth in the judge's findings are totally inconsistent with the claim that the decedent could have worked in a less-physically stressful job at Nicor.

¶ 75    Plaintiff claims that the decedent did not argue inconsistent positions, since he always claimed that he could have performed a different job at Nicor, pointing to his deposition testimony that he could perform a less-physically stressful job at Nicor. However, that deposition was taken in 2013, where the decedent answered the question of what job he would be able to perform at that time, not during his leave of absence, which began nearly 10 years prior. Instead, the decedent testified that he was "very sick" and "on the ground sick" from the time of his leave of absence through at least 2007 and that he "had no idea" when he would have been able to return to any kind of employment. To argue now that he could have worked in a different job at Nicor while he was on medical leave is not only inconsistent with the administrative law judge's finding but also with the decedent's own testimony.

¶ 76    Plaintiff also argues that the claim that decedent could work during his leave of absence is not inconsistent with the findings in the workers' compensation and/or occupational diseases settlement since, in that case, he merely sought compensation from Nicor for exposing him to toxins that impaired his ability to do his job. Plaintiff argues that position was also not inconsistent with his claims in the whistleblower case, since in that case, the decedent claimed Nicor treated him adversely and discharged him for reporting toxic work conditions to governmental authorities. However, the settlement order stated that the decedent claimed that he was "unable to work" and had an injury to his "whole body," which rendered him "permanently and totally disabled for any employment." Additionally, the decedent

represented to the Social Security Administration that he was disabled and unable to work. These representations are inconsistent with the decedent's claim that he could have performed a different job at Nicor during his leave of absence and, as a result, the decedent was judicially estopped from claiming otherwise.

¶ 77 This case is similar to *Department of Transportation v. Coe*, 112 Ill. App. 3d 506 (1983). In *Coe*, the employee suffered an injury during the course of his employment that he claimed rendered him 20% permanently disabled and unable to perform his job. *Coe*, 112 Ill. App. 3d at 508. The employee began a medical leave of absence and filed a workers' compensation claim against the employer, which the parties settled. *Coe*, 112 Ill. App. 3d at 508. The settlement agreement, which the Illinois Industrial Commission approved, stated that the employee received a lump sum representing " '20% man as a whole,' " and the employer soon afterwards advised the employee that he would be discharged, since he was permanently disabled and unable to perform his job and his leave of absence was nearing expiration. *Coe*, 112 Ill. App. 3d at 508-09. The employee then attempted to obtain his former job back, telling his employer that he was not disabled and that he could work. *Coe*, 112 Ill. App. 3d at 509. The employer then began discharge proceedings before the Civil Service Commission, which ordered the employee reinstated in his job. *Coe*, 112 Ill. App. 3d at 509. The trial court reversed the commission, finding that the employee was judicially estopped from claiming that he was no longer disabled. *Coe*, 112 Ill. App. 3d at 509. The appellate court affirmed on appeal, finding that the employee was judicially estopped from claiming that he could return to work in his former job after previously claiming before the commission that he had a permanent disability that rendered him unable to work. *Coe*, 112 Ill. App. 3d at 511. In the instant case, the decedent likewise settled his workers' compensation and/or occupational diseases case, claiming that he was permanently disabled and unable to return to work, and the decedent now claims that he could have returned to work during his leave of absence in a less-physically stressful job. As in *Coe*, the decedent is judicially estopped from first claiming for settlement purposes that he was disabled and unable to work and now claiming that he could have returned to work had Nicor placed him a in different job position.

¶ 78 Plaintiff further argues that judicial estoppel did not bar the decedent's claim, since he was not required to show that he was able to work to prove damages in order to prevail on a retaliatory discharge claim. Plaintiff argues that the decedent's whistleblower complaint sought compensatory damages from being discharged, including "back pay, retirement and other benefits, aggravation and inconvenience in a sum to be proved at trial." Plaintiff cites *Batson v. The Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 27, in support of her argument that the decedent's representations to the Social Security Administration were not a "factually inconsistent" position that judicially estopped his retaliatory discharge claim. In *Batson*, the employee developed carpel tunnel syndrome and filed a workers' compensation claim, after which her employer discharged her. *Batson*, 2013 IL App (1st) 123071, ¶¶ 6, 27. Prior to her discharge, the employee sought and received disability benefits from the Social Security Administration. *Batson*, 2013 IL App (1st) 123071, ¶ 27. The employee then sued for retaliatory discharge, and the trial court invoked the collateral source rule, which barred the employee from asserting judicial estoppel as an affirmative defense. *Batson*, 2013 IL App (1st) 123071, ¶ 22. On appeal, the appellate court affirmed, finding that, since the employer never presented any evidence of a valid, nonpretextual basis for discharging the employee and the employee's retaliatory discharge action claimed she was discharged solely for filing a

workers' compensation claim, her disability claim with the Social Security Administration that she was disabled and unable to work was not a " 'factually inconsistent' " position that judicially estopped her recovering on a retaliatory discharge claim. *Batson*, 2013 IL App (1st) 123071, ¶ 27.

¶ 79 However, *Batson* is distinguishable since, unlike the instant case, Nicor presented sufficient evidence that it terminated the decedent's employment due to his failure to provide medical documentation in support of his continuing leave of absence. Furthermore, the employee in *Batson* brought a retaliatory discharge claim under the Workers' Compensation Act, whereas the decedent in the instant case brought a claim of retaliatory discharge and violation of the whistleblower statute, which requires proof that the discharge was a result of reporting the employer to authorities when the evidence showed the discharge was based on the decedent's failure to provide necessary medical verification. *Batson*, 2013 IL App (1st) 123071, ¶ 30. Also, the trial court in *Batson* invoked the collateral source rule and found under its discretion that judicial estoppel did not apply. In the instant case, the trial court did not consider the collateral source rule and used its discretion to find that judicial estoppel barred the decedent's claims. *Batson*, 2013 IL App (1st) 123071, ¶ 22.

¶ 80 In reaching its findings, the *Batson* court distinguished a federal case, *Muellner v. Mars, Inc.*, 714 F. Supp. 351 (N.D. Ill. 1989). In *Muellner*, the employer placed the employee on long-term disability, for which she received benefits. *Muellner*, 714 F. Supp. at 352. While she was on disability leave at work, she applied for and received disability benefits from the Social Security Administration, for which she claimed that she was totally disabled and unable to work. *Muellner*, 714 F. Supp. at 352. The employer then terminated the employee per company policy, since she had been on long-term disability for two years, and advised her that she would continue to receive disability benefits until she recovered, retired, died, or reached age 65, whichever comes first. Nevertheless, the employer soon terminated the benefits because the employee did not provide medical documentation that she continued to be disabled. *Muellner*, 714 F. Supp. at 353. The employee then filed a lawsuit for retaliatory discharge, claiming that she was discharged because she refused to accept early retirement. *Muellner*, 714 F. Supp. at 353. Applying Illinois law, the district court found that the employee was judicially estopped from asserting a claim of retaliatory discharge and granted the employer's motion for summary judgment, since she represented to the Social Security Administration that she was unable to work, while the ability to work was a "necessary prerequisite" to her retaliatory discharge claim. *Muellner*, 714 F. Supp. at 360. The *Batson* court declined to follow *Muellner*, since it found that the employee's ability to work was not a necessary prerequisite to a retaliatory discharge claim under the Workers' Compensation Act. *Batson*, 2013 IL App (1st) 123071, ¶ 30.

¶ 81 However, in the instant case, the decedent was required to prove actual damages, which is an element of a common law tort of retaliatory discharge. As stated, "[d]amages for an injury to the plaintiff are an essential element of any tort cause of action" (*Reuter*, 397 Ill. App. 3d at 928) and "a plaintiff is not entitled to retaliatory discharge damages during the time of his total incapacity to work" (*Kritzen*, 226 Ill. App. 3d at 559). Plaintiff argues that *Muellner* (as well as *Coe*) is distinguishable, since the decedent was not an at-will employee claiming that he was totally disabled and then attempting to return to his former job claiming he could perform the job, and that he instead admitted that he could not perform his old job and he wanted to return to Nicor in a role more suitable for his circumstances. However, as stated, the decedent did, in

fact, testify that he was unable to work at the time of his leave of absence through at least 2007, when he began to receive social security disability benefits. The decedent did testify that he could return to a different job at Nicor in 2013, nearly 10 years after he began his leave of absence; however, he never claimed that he was able to work during his leave of absence, and he admitted he never attempted to find a less-strenuous job since he was discharged. As a result, the trial court did not abuse its discretion when it found judicial estoppel applied as a result of the decedent's prior inconsistent representations to the Social Security Administration and the Illinois Workers' Compensation Commission.

¶ 82    Plaintiff claims that, even if the decedent were too sick to work, he could still recover punitive damages under a theory of retaliatory discharge or violation of the Whistleblower Act. Plaintiff cites *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978), which found that "[i]t has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." Plaintiff cites *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, as a case where "an award of $3.6 million in punitive damages comported with due process when, among other reasons, the employee's retaliatory discharge action was based on termination for exercise of Worker's Compensation Act rights." *Holland* cites the elements of punitive damages as a finding of " 'whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.' " *Holland*, 2013 IL App (5th) 110560, ¶ 258 (quoting *Blount v. Stroud*, 395 Ill. App. 3d 8, 24-25 (2009)).

¶ 83    However, as stated, "[d]amages for an injury to the plaintiff are an essential element of any tort cause of action" (*Reuter*, 397 Ill. App. 3d at 928) and "a plaintiff is not entitled to retaliatory discharge damages during the time of his total incapacity to work" (*Kritzen*, 226 Ill. App. 3d at 559). In *Holland*, the jury awarded the plaintiff punitive damages of $3.6 million *in addition* to compensatory damages of $660,400. *Holland*, 2013 IL App (5th) 110560, ¶ 252. In this case, the decedent was unable to work, so he could not show actual damages, which is an element of proving the tort of retaliatory discharge. Since the decedent could not prove one of the elements of retaliatory discharge, he was not entitled to punitive damages. Illinois does not recognize a cause of action for punitive damages alone; punitive damages represent a type of relief rather than an independent cause of action. *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 199 (1991); see *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 146 (a "plaintiff cannot assert punitive damages without first properly pleading the underlying claims").

¶ 84    Plaintiff additionally argues that the Whistleblower Act does not require that the decedent be able to return to work and that he could have recovered damages for the loss of Employee Benefit Association benefits, loss of a promotion, loss of his ability to work a more sedentary job, loss of his health care benefits, and more, and that he could recover damages even if he could not perform his former job. The Whistleblower Act states:

> "Damages. If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to the following, as appropriate:

- 23 -

(1) reinstatement with the same seniority status that the employee would have had, but for the violation;

(2) back pay, with interest; and

(3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." 740 ILCS 174/30 (West 2004).

¶ 85    Although the Whistleblower Act provides for all relief necessary to make the employee whole, in the instant case, there were no actual damages that the decedent could have shown that would have made him whole, since he was not able to work when Nicor discharged him. As a result, the decedent could not have been reinstated with a job at Nicor, since he could not work, and he similarly could not have recovered damages resulting from the termination of his employment, such as lost pay or health insurance, since he was not able to work and receive those benefits in the first place. Furthermore, the Whistleblower Act does not provide for punitive damages. See *Averett v. Chicago Patrolmen's Federal Credit Union*, No. 06 C 4606, 2007 WL 952034, at *4 (N.D. Ill. Mar. 27, 2007) (finding that punitive damages are not available under the whistleblower statute where the statute's inclusion of a damages section allowing only for " 'make whole' " relief revealed the legislature's intent to exclude the availability of other types of damages). As a result, the decedent could not recover damages under the whistleblower act where he was unable to work.

¶ 86    Plaintiff also argues that, "[w]hile plaintiff understands that judicial estoppel is to protect the integrity of the judicial system, contrary to [Nicor]'s claim, [Nicor] could never have raised a judicial estoppel defense" in the whistleblower case because the workers' compensation and/or occupational diseases settlement stated that "[t]he parties hereto acknowledge that the [decedent] presently has a lawsuit against [Nicor] pending in the Circuit Court of Du Page County, Case No. 2010 L 128, and, notwithstanding any other provision of this Contract and Rider, the parties agree that said lawsuit is neither waived nor released by this agreement." However, the settlement terms in this passage merely state that the settlement of the workers' compensation and/or occupational diseases case does not extinguish the claims in the decedent's separate whistleblower case, allowing that litigation to proceed. As a result, the settlement order does prevent Nicor from raising judicial estoppel in the whistleblower case.

¶ 87    We cannot say that the trial court's finding that judicial estoppel applies is arbitrary, fanciful, or unreasonable, or that no reasonable person would make that finding. As a result, the trial court did not abuse its discretion when it found that the doctrine of judicial estoppel applies, and the decedent was barred from claiming that he was able to return to work at Nicor. Since the decedent could not claim that he was able to return to work, he could not recover compensatory damages in the whistleblower case. As a result, defendants in the instant legal malpractice case did not proximately cause an actual injury to the decedent, and the trial court did not err when it granted summary judgment in the legal malpractice case in favor of defendants.

¶ 88                                          III. Discovery

¶ 89    In the alternative, plaintiff argues that the trial court erred when it limited oral discovery prior to hearing defendants' motion for summary judgment. Specifically, plaintiff claims that it was "fundamentally unfair" for the trial court to refuse her request to depose at least 32 witnesses, since she could have obtained evidence in those depositions that could defeat

- 24 -

defendants' motion for summary judgment, especially where defendants' failure to conduct discovery in the whistleblower case is a key allegation of legal malpractice in the instant case. For the following reasons, we affirm the trial court's order limiting the scope of discovery.

¶ 90 "A trial court is afforded considerable discretion in ruling on matters pertaining to discovery, and thus its rulings on discovery matters will not be reversed absent an abuse of that discretion." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 11 (2009) (citing *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 457 (2006), and *Crichton* , 358 Ill. App. 3d at 1150). As stated, a trial court abuses its discretion "only where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Crichton*, 358 Ill. App. 3d at 1150 (citing *Hall*, 195 Ill. 2d at 20).

¶ 91 "[Illinois] Supreme Court Rule 191(b) specifies the procedure to be followed where additional discovery is needed in regard to summary judgment proceedings." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064 (1992). Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) provides:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof."

¶ 92 After the Grossman defendants filed their motion for summary judgment in the instant legal malpractice case, plaintiff filed a motion to take additional oral discovery and attached an affidavit naming at least 32 witnesses whom plaintiff argued needed to be deposed before responding to the Grossman defendants' motion for summary judgment. However, plaintiff's affidavit did not meet the requirements of Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) since she did not aver what she believed each prospective witness would testify to and the reasons for her beliefs. " 'The affidavit must state specifically what the affiant believes the prospective witness would testify to if sworn and reasons for the affiant's belief.' " *Olive Portfolio Alpha, LLC v. 116 W. Hubbard Street, LLC*, 2017 IL App (1st) 160357, ¶ 29 (quoting *Giannoble*, 233 Ill. App. 3d at 1065 ("Rule 191(b) requires facts, not conclusions.")). Instead, plaintiff's affidavit sets forth a long list of potential witnesses, including doctors who may know more information concerning the decedent's medical condition and current and former Nicor employees who may know more information concerning testing the drinking water for contamination, the failure to remediate the problem, and the harassment the decedent may have received after reporting it. However, allegations in a "general sense" of what relevant information proposed witnesses would provide for the plaintiff's claim is not sufficient to show compliance with Rule 191(b). *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 456 (2000) (finding that "[f]ailure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed"). It would appear that the decedent was on a "fishing excursion" and had no idea what, if anything, the witnesses would provide in the manner of useful evidence. As a result, plaintiff's affidavit did not comply with the

requirements of Rule 191(b), since she did not state specifically what she believed the prospective witness would testify to if sworn and the reasons for her belief.

¶ 93 Also, as explained earlier, the decedent's claim that he was not totally disabled and that he could return to work in a different job at the time of his leave of absence was barred by the doctrine of judicial estoppel. None of the testimony sought by plaintiff could have changed the fact that the decedent represented to the Social Security Administration and the Illinois Workers' Compensation Commission that he was totally disabled and unable to work. As a result, the testimony sought by plaintiff would not have prevented judicial estoppel from barring the decedent's claims as a matter of law, and the trial court did not need extensive deposition testimony to consider defendants' motion for summary judgment.

¶ 94 Additionally, plaintiff did not aver that any of the 32 witnesses would raise an issue of material fact by testifying that the decedent was not totally disabled during his leave of absence and could return to work. Plaintiff lists only one physician as a potential witness, Dr. Siegfried, who she avers "will have information about [the decedent]'s medical condition," without explaining what he would reveal about the decedent's health or his ability to work. The proof of claim forms completed by Dr. Siegfried were already in the record in the whistleblower case, and the trial court determined that they did not raise a genuine issue of material fact that the decedent was not totally disabled and able to work in some job. Since plaintiff's affidavit did not aver that any of the 32 witnesses would testify that the decedent was not totally disabled and was able to return to work, the depositions sought by plaintiff would not have raised a genuine issue of material fact.

¶ 95 Furthermore, the legal malpractice case had been pending for more than a year at the time plaintiff filed her motion for additional discovery, and both parties had exchanged written discovery, including answers to interrogatories and production of thousands of pages of documents. At the time plaintiff filed her motion, she had not conducted any depositions, despite her claim that she needed to depose at least 32 witnesses to respond to the motion for summary judgment. As a result, we cannot say that the trial court abused its discretion when it denied plaintiff's motion in part and granted her leave to depose one additional witness.

¶ 96 Plaintiff argues that strict compliance with Rule 191(b) is not required where a motion for summary judgment is made by the party who does not have the burden of proof on an issue asserting that the nonmovant cannot prove a *prima facie* case, and the respondent has not been provided a reasonable opportunity to conduct discovery before summary judgment. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 26. However, *Jiotis* further explained that, "to demand strict compliance with Rule 191(b) before adequate discovery—*before a party even knows the identity of witnesses who can provide material facts*—turns Rule 191(b) from a procedural safeguard for the nonmovant into a tactical weapon for the movant." (Emphasis added.) *Jiotis*, 2014 IL App (2d) 121293, ¶ 29. In the instant case, we cannot say that plaintiff did not have an adequate opportunity to conduct discovery. At the time of plaintiff's motion, the parties had exchanged written discovery, including answers to interrogatories and production of thousands of pages of documents, and plaintiff was able to name at least 32 potential witnesses that she wanted to depose who she claimed had knowledge of material facts, yet no depositions other than the decedent's were noticed during the 14 months that the case was pending. As a result, we cannot say that the trial court abused its discretion when it limited plaintiff to one additional deposition, and we affirm.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The trial court did not err when it granted defendants' motion for summary judgment, and it did not abuse its discretion when it found that judicial estoppel barred the decedent's claims. Additionally, the trial court did not abuse its discretion when it limited the scope of discovery prior to ruling on the motion for summary judgment. However, we cannot condone the claimed conduct of defendants in the handling of the decedent's case. If defendants had no defense to the motion for summary judgment, they had an obligation to inform the decedent, and this court has no knowledge whether they did or did not do so. In addition, they have an obligation to appear at the hearing on the motion for summary judgment. Unfortunately for plaintiff, notwithstanding the decedent's representations, plaintiff cannot prove the underlying case against defendants.

Affirmed.